STATE OF MAINE  SUPERIOR COURT
CUMBERLAND, ss. CIVIL ACTION
DOCKET NO. CV-02-185

2004 JUL 29 P 3: 58

MICHAEL HALE, ET AL.,

        Plaintiffs

   v.                           ORDER ON DEFENDANT'S
                                 MOTION FOR SUMMARY
DEMETRI ANTONIOU                  JUDGMENT

DONALD L. GARBRECHT
LAW LIBRARY

AUG 20 2004

        Defendant

This matter is before the court on the defendant's motion for summary

judgment pursuant on the plaintiffs' complaint, which alleges intentional

infliction of emotional distress (Count I), civil assault (Count II) and punitive

damages.[1]

## BACKGROUND

The plaintiff Jordan Hale is fifteen years old and currently attends

Falmouth High School. (SMF ¶ 1.) He was thirteen at the time of the incident

that is the subject of this lawsuit. (ASMF ¶ 1.)

When Jordan was in the seventh grade, he signed up to play in the Casco

Bay hockey league. (SMF ¶ 3.) On December 10, 2001, Jordan's team played

another team on which Michael Antoniou was a player. (SMF ¶ 10.) Jordan

---

[1] In this order, the court has implicitly dealt with the defendant's pending Motion to
Strike portions of the Jordan Hale Affidavit and the entire Edie Hale Affidavit in its
independent evaluation of all of the supporting, opposing and reply statements of
material facts submitted by the parties pursuant to M.R. Civ. P. 56(h). Accordingly,
the court determines that there is no need to separately rule on any such motion to
strike and declines to do so.

knew Michael and they were friends. (SMF ¶ 11.) Jordan also knew Michael's father, the defendant Demetri Antoniou. (SMF ¶ 11.)

Towards the end of the hockey game, Jordan and Michael collided. (SMF ¶ 13.) Jordan had lowered his shoulder and checked Michael. (SMF ¶ 15.) Michael went down onto the ice. (SMF ¶ 16.) Michael took a while to get up, and Jordan could tell Michael had been jarred by the hit. (SMF ¶ 17.) Michael returned to his team bench, and the game ended about ten seconds later. (SMF ¶ 18.) No penalty was called against Jordan. (ASMF ¶ 5.)

From the defendant's perspective, it appeared as if Jordan drove his hockey stick onto Michael's "right jaw and right neck." (SMF ¶ 22.)[2] The defendant testified that he thought his son might have suffered a concussion. (OSMF ¶ 23.) In fact, Michael was injured as a result of the hit. (SMF ¶ 24.)

After the game, the teams went to their respective locker rooms. (SMF ¶ 25.) Jordan was in the locker room for about five minutes and had already started getting out of his hockey equipment when he saw the defendant at the doorway of his team's locker room. (SMF ¶ 26.) According to Jordan,

> I was talking to one of my teammates. And out of the corner of my eye I saw him – saw him and Mr. Scala kind of, like – Mr. Scala was leaning against the door; and he was kind of walking – stepped in front of him. And I didn't really pay any attention to it. I thought he was congratulating the team. And then I heard what he was saying. And then I saw Mr. Scala push him out. . . . I don't know what he said the first [sic]. But I heard him say, No. 7, stay away from my fucking kid. I'll get you next time.

---

[2] The plaintiffs' denial of this statement is inadmissible because it is not supported by the record citation. *See* M.R. Civ. P. 56; *Doyle v. Dep't of Human Serv.*, 2003 ME 61, ¶ 10, 824 A.2d 48, 52-53; *compare* OSMF ¶ 22 *with* D. Antoniou Dep.11: 2-5 & 11:24-12:2. Although the defendant equivocates on whether to use the term "spear" he does not equivocate on whether, from his perspective, Jordan "ended up getting" Michael on his right neck and right jaw, nor does the defendant contradict his earlier testimony that Jordan drove the hockey stick underneath his son's face mask. *See* D. Antoniou Dep.11: 2-5 & 11:24-12:2.

(SMF ¶¶ 27-28). Jordan does not recall the defendant saying anything else. (SMF ¶ 29.)[3]

Jordan testified that the defendant had Michael's hockey stick in his left hand, which the defendant was pointing at him as he spoke. (SMF ¶ 30.) He also testified that it all happened very quickly, in a matter of seconds. (SMF ¶ 31.) In addition, Jordan stated that it looked as if the defendant would continue his advance toward him had Scala not stepped in between them. (ASMF ¶ 18.)[4]

According to the defendant, after the game, he was looking for his son's locker room. (SMF ¶ 39.) The defendant testified that he stepped into the locker room of Jordan's team and told Scala that "No. 7 was a fucking asshole." (SMF ¶ 43.) He also testified that at the time that he made this comment, he could not see "No. 7," nor did he know that No. 7 was Jordan Hale. See SMF ¶ 43; RSMF ¶ 10.[5]

Scala testified that the defendant asked him where Jordan was, came into the locker room with a "hockey stick under – a bag on his shoulder, a hockey stick under his arm," and said, "Jordan Hale is an asshole," not "number seven is an asshole." See OSMF ¶ 43; ASMF ¶ 10; RSMF ¶ 9. Scala also testified that the defendant's statement caused him to "kind of stop[] in

---

[3] The plaintiffs' denial of ¶ 29 is inadmissible because the plaintiffs have not offered an adequate explanation for Jordan's changed testimony. See Zip Lube, Inc. v. Coastal Savings Bank, 1998 ME 81, ¶ 10, 709 A.2d 733, 735.

[4] This statement is not inadmissible under Zip Lube because it does not contradict Jordan's deposition testimony; rather, it elaborates on the testimony already given. See J. Hale Dep. 13: 16-18; see also Zip Lube, 1998 ME 81, ¶ 10, 709 A.2d at 735.

[5] Scala stands six-feet, five-inches tall, and the defendant "probably comes up to [Scala's] chest." (SMF ¶ 44.)

3

[his] tracks" and that after making the statement, "[the defendant] kept walking into the locker room." *See* Scala Dep. 14: 9-12 (cited in part by ASMF ¶ 11 and in part by ASMF ¶ 12); *see also* Scala Dep. 33: 20-23 (cited by ASMF 15.) Scala went on to testify that "[the defendant] raised his stick and started pointing at Jordan and said I will get you get you next time. At which case I stepped in front of him . . ." *See* Scala Dep. 14:11-15 (cited by ASMF ¶ 12.)[6] Scala asked the defendant to leave the locker room and the defendant left immediately. (SMF ¶ 51.) Scala did not notice how Jordan seemed in the locker room after the defendant left. (SMF ¶ 53.)

The parties dispute whether the defendant carried a hockey stick into the locker room. *Compare* SMF ¶¶ 40, 47 *with* OSMF ¶¶ 40, 47.[7] The parties also dispute whether the defendant's remarks were made to Scala or to both Scala and Jordan. *Compare* SMF ¶ 46 *with* OSMF ¶ 46; *compare also* ASMF ¶ 13 *with* RSMF ¶ 13. In addition, they dispute whether the defendant made eye contact with Jordan, *compare* SMF ¶ 47 *with* OSMF ¶ 47, and whether at the time of the incident, the defendant was "more angry with the coach for condoning aggressive behavior [than with Jordan]." *Compare* SMF ¶¶ 48, 49 *with* OSMF ¶ 48, 49.

---

[6] When Scala stepped in front of Antoniou, there was no contact between them; Scala did not think anybody was physically attacking one of the kids. (SMF ¶ 52.)

[7] After each game, the hockey players take their own hockey sticks with them off the ice into the locker room. (SMF ¶ 41.) At the time that the defendant came upon the locker room containing Scala's team, where Jordan was, he had not yet been to his son's locker room. (SMF ¶ 42.)

4

The parties also dispute whether Jordan was shaken up by the incident. *Compare* ASMF ¶ 26[8] *with* RSMF ¶ 26; *see also* SMF ¶¶ 37-38. At his deposition, the plaintiff testified that after the incident, he finished undressing and talked with his teammates and that when he left the locker room five minutes after the incident, he did not tell his father what had happened, although he told him "vaguely that night." (SMF ¶¶ 32, 34.) He also testified that when his father asked him what the defendant said, he answered that he "didn't hear [the defendant]" because he "didn't want this to turn into anything that big" and because he "didn't want to make a big deal out of it." (SMF ¶ 35.) Jordan testified that he did not want to make a big deal about the incident because he "didn't think it was that important." (SMF ¶ 36.)

However, in his affidavit, Jordan testified that that after the incident, when he tried to stand up, his knees buckled and he had to sit back down. (ASMF ¶ 27.)[9] In addition, both Jordan and his mother have offered testimony that Jordan is very private about his feelings generally and tries to downplay emotions and emotional situations. *See* Edie Hale Aff. at ¶ 5 (cited by ASMF ¶ 26);[10] Jordan Hale Aff. at ¶ 19 (cited by ASMF ¶ 26).[11]

---

[8] Jordan's affidavit statement is not inadmissible under *Zip Lube* because Jordan offers a palatable explanation for the somewhat inconsistent testimony; specifically, he claims he initially chose to downplay the incident because he and the defendant's son are friends. *See* SMF ¶ 11; *See Zip Lube, Inc.,* 1998 ME 81, ¶ 10, 709 A.2d at 735.

[9] This statement is not inadmissible under *Zip Lube* because it does not contradict Jordan's deposition testimony. At his deposition, Jordan was not asked about his own reaction to the defendant's behavior. *See* J. Hale Dep. at 13; *see also Zip Lube, Inc.,* 1998 ME 81, ¶ 10, 709 A.2d at 735.

[10] The defendant has moved to strike the Edie Hale affidavit in its entirety. The court agrees that the majority of the affidavit is hearsay, but finds ¶ 5 of the affidavit admissible as relevant lay testimony. *See* Me. R. Evid. 701, 401 & 801(c).

Although Jordan has done fine in athletics since the incident, and has performed at a high level, including making the varsity high school soccer team as a freshman, there was a period of several games and weeks after the incident when he was not his usual self and when his play changed dramatically. *See* SMF ¶ 59; OSMF ¶ 59. The change was so pronounced that Scala noticed it. (OSMF ¶ 59.) In addition, Jordan saw a counselor for three sessions. (ASMF ¶ 31.)

## DISCUSSION

Summary judgment is proper where there is no genuine issue of material fact. *Rogers v. Jackson,* 2002 ME 140, ¶ 5, 804 A.2d 379, 380. In considering a motion for summary judgment, the court must "consider the evidence and reasonable inferences that may be drawn from the evidence in the light most favorable to the party against whom the summary judgment [is sought] in order to determine if the parties' statements of material facts and referenced record evidence reveal a genuine issue of material fact." *Lever v. Acadia Hosp. Corp.,* 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179 (citing *Id.*). A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial. *Id.* (citing *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575).

A.  **Civil Assault**

"An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other

---

[11] This statement is not inadmissible under *Zip Lube* because Jordan explains why he may have downplayed his reaction to the incident in his deposition testimony. *See* J. Hale Dep. at 13; *see also Zip Lube, Inc.,* 1998 ME 81, ¶ 10, 709 A.2d at 735.

or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Restatement (Second) Torts,* § 21 (1965). Where the actor does not act intentionally, he will not be liable to the other for an apprehension caused by his actions. *Id.*

In the present action, Jordan testified that the defendant was pointing a hockey stick at him as he said, "No. 7 stay away from my fucking kid." *See* SMF ¶¶ 27-28, 30. In addition, Scala testified that the defendant asked where Jordan was, came into the locker room with a "hockey stick under – a bag on his shoulder, a hockey stick under his arm," and said, "Jordan Hale is an asshole." *See* OSMF ¶ 43; ASMF ¶ 10; RSMF ¶ 9. Scala also testified that after he made that statement, "[the defendant] kept walking into the locker room." *See* Scala Dep. 14: 9-12 (cited in part by ASMF ¶ 11 and in part by ASMF ¶ 12); *see also* Scala Dep. 33: 20-23 (cited by ASMF ¶ 15). Collectively, this testimony creates a dispute regarding whether the defendant acted intending to cause Jordan imminent harm or imminent apprehension of harm.

There is also a dispute about whether Jordan was put in imminent apprehension by the defendant's acts. Jordan stated in his deposition that he saw Scala push the defendant out. *See* SMF ¶ 27. In his affidavit, he followed up on his deposition testimony and stated that from his perspective, it that it looked as if the defendant would continue his advance towards him had Scala not pushed the defendant out. *See* ASMF ¶ 18. In addition, Jordan also stated that after the incident, his knees buckled and he had to sit back down. *See* ASMF ¶ 27. Viewing these facts collectively in a light most favorable to Jordan, who was thirteen years old at the time of the incident, *see* ASMF ¶ 1, it

7

is possible that Jordan was put in imminent apprehension by the defendant's acts.

Accordingly, the defendant's motion for summary judgment on the plaintiffs' claim for civil assault is denied.

B.     Intentional Infliction of Emotional Distress

To establish a defendant's liability for intentional infliction of emotional distress, a plaintiff must prove that

> (1) the defendant engaged in intentional or reckless conduct that inflicted serious emotional distress or would be substantially certain to result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable; and (3) the plaintiff suffered serious emotional distress as a result of the defendant's conduct.

*Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶ 17, 834 A.2d 947, 952 (citing *Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18, 22-23; *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 15, 711 A.2d 842, 847). "Serious emotional distress means emotional distress, created by the circumstances of the event, that is so severe that no reasonable person could be expected to endure it." *Id.*

Here, there are the admissible material facts before the court that create a dispute as to whether the defendant acted intentionally or recklessly to cause Jordan emotion harm. The same facts that create a dispute about the intent element of the civil assault claim also create a dispute about the intent element of Jordan's claim for intentional infliction of emotional distress.

In addition, the parties dispute whether the defendant's alleged behavior of swearing at, pointing a hockey stick at, and threatening a thirteen-year-old was so extreme and outrageous to exceed all possible bounds of decency. *See collectively* ASMF ¶ 1; SMF ¶¶ 27-28, 30; OSMF ¶ 43. "Where reasonable men

8

may differ, it is for the jury, subject to the control of the Court, to determine whether, in a particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *See Rubin v. Matthews Int'l Corp.*, 503 A.2d 694, 699 (Me. 1986) (quoting *Restatement (Second) of Torts* § 46 comment h, at 77 (1965)).

Finally, there are facts before the court that create a dispute as to whether Jordan suffered serious emotional distress as a result of the defendant's conduct. Jordan claims he was shaken up by the incident. *See* ASMF ¶ 26. Although he stated that he didn't think the incident was important and that he didn't want to make a big deal about it, Jordan and his mother claim that Jordan is very private about his feelings generally and tries to downplay emotions and emotional situations. *See* Edie Hale Aff. at ¶ 5 (cited by ASMF ¶ 26); Jordan Hale Aff. at ¶ 19 (cited by ASMF ¶ 26); *see also* SMF ¶¶ 37-38. In addition, Jordan saw a counselor regarding the incident. *See* ASMF ¶ 31. Finally, Jordan's hockey coach testified that there was a period following the incident in which Jordan was not his usual self and Jordan's play changed dramatically. *See* OSMF ¶ 59.

Accordingly, the defendant's motion for summary judgment on Jordan's claim for intentional infliction of emotional distress is denied.

C.    Punitive Damages

For the punitive damages claim to withstand summary judgment, the plaintiffs must (1) establish a prima facie case of an underlying tort and (2) generate a dispute regarding whether the defendant acted maliciously. *See Rutland v. Mullen,* 2002 ME 98, ¶ 17, 798 A.2d 1104, 1111; *see also Zemero*

*Corp. v. Hall*, 2003 ME 111, ¶ 10, 831 A.2d 413, 416. The plaintiffs have done both.

Because the plaintiffs' claims for civil assault and intentional infliction of emotional distress are allowed to go forward, their punitive damages claim are not barred by the absence of an underlying tort. *See Rutland*, 2002 ME 98, ¶ 17, 798 A.2d at 1111.

In addition, the plaintiffs have shown that there is a dispute regarding whether the defendant's alleged actions were motivated by ill will toward Jordan or so outrageous that malice towards Jordan as a result of that conduct can be implied. *See collectively* OSMF ¶ 43; ASMF ¶ 10; RSMF ¶ 9 (citing Scala's testimony that the defendant asked him where Jordan was, came into the locker room with a "hockey stick under – a bag on his shoulder, a hockey stick under his arm," and said, "Jordan Hale is an asshole"); *see also* SMF ¶ 46 & ASMF ¶ 13 *and* OSMF ¶ 46 & RSMF ¶ 13 (disputing whether the defendant's remarks were made to Jordan or to Scala); SMF ¶¶ 48, 49 *and* OSMF ¶¶ 48, 49 (establishing that the defendant was angry and disputing whether he was angry with Jordan or with the coach); *and see St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶ 16, 818 A.2d 995, 1001 (holding that express malice exists when "'the defendant's tortious conduct is motivated by ill will toward the plaintiff'" and that implied malice exists when "'deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied.'") (quoting *Tuttle v. Raymond*, 494 A.2d 1353, 1354 (Me. 1985)).

## DECISION

Based upon the foregoing analysis, and pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Order on the Civil Docket by a notation incorporating it by reference and the entry is

Defendant's Motion for Summary Judgment is DENIED.

Dated:  July 29, 2004

_____
Justice, Superior Court

11

MICHAEL HALE  - PLAINTIFF OBO

Attorney for: MICHAEL HALE
MICHAEL WAXMAN
PO BOX 375
371 FORE ST SUITE 303
PORTLAND ME 04112-0375

EDIE HALE  - PLAINTIFF

Attorney for: EDIE HALE
MICHAEL WAXMAN
PO BOX 375
371 FORE ST SUITE 303
PORTLAND ME 04112-0375


JORDAN HALE  - MINOR PLAINTIFF
Attorney for: JORDAN HALE
MICHAEL WAXMAN
PO BOX 375
371 FORE ST SUITE 303
PORTLAND ME 04112-0375

vs
DEMETRI ANTONIOU  - DEFENDANT

Attorney for: DEMETRI ANTONIOU
RUSSELL PIERCE
NORMAN HANSON & DETROY
415 CONGRESS ST
PO BOX 4600
PORTLAND ME 04112

SUPERIOR COURT
CUMBERLAND, ss.
Docket No   PORSC-CV-2002-00185

**DOCKET  RECORD**

Filing Document: COMPLAINT                    Minor Case Type: PROPERTY NEGLIGENCE