STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV. 87-40
2007 SEP 14 P 3: 59
REC-CUM-9/14/2007

CLYDE W. RICKER and
SLR ENTERPRISES LLC,
       Plaintiffs

v.

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT AND
SUBSEQUENT ATTACHMENT

MEGAN A. CRAWFORD,
       Defendant

Before the Court are Plaintiffs Clyde W. Ricker and SLR Enterprises LLC's Motion for Summary Judgment on its two breach of contract claims and Motion for Subsequent Attachment of recently-discovered assets of the Defendant. The Defendant Megan A. Crawford opposes both of these Motions.

## PROCEDURAL BACKGROUND

On January 29, 2007, Plaintiffs Clyde Ricker and SLR Enterprises LLC filed a Complaint with this Court against Defendant Megan Crawford, alleging breach of contract relating to a purchase and sale agreement and a private loan agreement between the parties. At the same time, the Plaintiffs filed an ex parte Motion for Pre-Judgment Attachment and Trustee Process against the assets of the Defendant. This Motion was granted by this Court (Delahanty, J.) on January 30, 2007 in the amount of $36,833.00, which represented the amount claimed to be past due on the private loan made to the Defendant. On May 29, 2007, the Plaintiffs filed a Motion for Summary Judgment on their two breach of contract claims. On June 5, 2007, the Plaintiffs filed a Motion for Subsequent Attachment and Trustee Process, stating that they may have learned of other

assets of the Defendant and that the initial Order of attachment issued on January 30, 2007 resulted in attachment of property far less than the amount set forth in that Order. The Defendant objected to each of these Motions in turn.

## FACTS

Plaintiff Clyde Ricker ("Ricker") is a member of Plaintiff SLR Enterprises LLC ("SLR"), the registered former name of The Fitness Barn, a Maine limited liability company. The Fitness Barn is a fitness center located in Windham, Maine that was managed by Richard Garcia ("Garcia") and that employed the Defendant Megan A. Crawford ("Crawford"). Sometime prior to October 2006, Ricker, Garcia and Crawford began to discuss the possibility of Ricker selling The Fitness Barn to Crawford as a going concern.

In light of these discussions, on October 3, 2006, Crawford and Ricker personally entered into an agreement whereby Ricker would loan Crawford forty thousand dollars ($40,000.00) and be repaid the same plus interest. The loan was apparently to be used to purchase fitness equipment and cover other expenses related to increasing business at The Fitness Barn in anticipation of Crawford purchasing the same. The parties disagree as to how to classify this loan arrangement. Ricker describes it as a pure personal loan to Crawford that she is obligated to repay. Crawford, however, maintains that she never intended to take out a personal loan and that she agreed to borrow the $40,000.00 solely because she understood it to be a requirement imposed by Ricker if she wanted to purchase the business. Crawford also states that she has repaid at least twenty thousand dollars ($20,000.00) of the total $40,000.00, although she admits that she does not have documentation to prove payment.

On October 18, 2006, SLR and Crawford entered into a "Purchase Agreement and Receipt for Deposit" ("Purchase Agreement") wherein SLR, via its member Ricker, agreed to sell and Crawford agreed to buy The Fitness Barn business as a going concern, including furniture, equipment, inventory, intellectual property, goodwill and customer contracts, for a total purchase price of two hundred thousand dollars ($200,000.00). The closing date set forth in the Purchase Agreement was January 31 [presumably 2007].

Both parties agree that there was discussion in early December 2006 about moving up the date of the closing. Ricker maintains that it was merely a discussion, while Crawford asserts that Ricker agreed to forego repayment of the $40,000.00 personal loan if Crawford agreed to move up the closing. Ricker denies that he ever agreed to forgive the personal loan. Around this same time, Garcia alleges that Crawford made several statements that she might not go through with the deal to purchase the business ("Maybe you should ask someone else if they want to purchase the club"). Affidavit of Richard Garcia, ¶ 4. Concerned, Garcia notified Ricker, who in turn contacted Crawford and inquired about repayment of the personal loan. According to Ricker and Garcia, Crawford stated that she would repay the loan on December 31st and then agreed to repay it immediately when Ricker told her that she would not have to pay the remaining interest payment if she paid immediately.

The parties also disagree about events that occurred later in December 2006 surrounding Crawford's termination as an employee of The Fitness Barn. Ricker maintains that Crawford simply stopped coming to work and ceased all communications with him in mid-December 2006. Crawford, however, states that she left to attend training in Colorado in December 2006 that was sponsored by The Fitness Barn and that

3

was within the scope and course of her employment. Upon returning from this trip, she was terminated as an employee of The Fitness Barn by Ricker and Garcia. Both Ricker and Garcia deny that they fired Crawford. After her termination, Crawford went to The Fitness Barn to pick up her personal effects and also to access files she had saved on her computer. The computer files, Crawford alleges, contained a business plan from Garcia relating to The Fitness Barn as well as a record of payments that Crawford had made to reimburse Garcia. Crawford was unable to access these computer files. Ricker and Garcia deny that Crawford ever attempted to obtain her belongings or computer files.

The parties apparently ceased communications at this time and the closing contemplated in the Purchase Agreement did not occur. Ricker subsequently auctioned off the business and netted proceeds of twenty-seven thousand four hundred and fifty-five dollars ($27,455.60) from the sale after expenses. The record before the Court does not reveal when this auction took place, although the timeline of the pleadings shows that it occurred sometime before May 25, 2007 (the first mention of the sale in any Court documents). Ricker now seeks the difference between the amount he would have received from Crawford pursuant to the Purchase Agreement and the $27,455.60 he received from the sale. Ricker also seeks the amount he is still owed on the personal loan he made to Crawford.

## STANDARD OF REVIEW

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 15, 917 A.2d 123, 126. "A court may properly enter judgment in a case when the parties are not in dispute over the

4

[material] facts, but differ only as to the legal conclusion to be drawn from these facts." *Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994). A genuine issue of material fact exists "when the evidence requires a fact-finder to choose between competing versions of the truth." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93 ¶ 9, 878 A.2d 504, 507. An issue of fact is material if it "could potentially affect the outcome of the suit." *Id.* An issue is genuine if "there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities exist, they must be resolved in favor of the non-moving party. *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

## DISCUSSION

A motion for summary judgment must be denied if there "are competing versions of the truth" that involve genuine issues of material facts. *Lever*, 2004 ME 35, ¶ 2, 845 A.2d at 1179. And though a court may believe that one party's offered proof is more persuasive, it is the responsibility of a fact-finder, and not a court acting on a motion for summary judgment, to weigh the evidence and render a decision. *Arrow Fastener*, 2007 ME 34, ¶ 16, 917 A.2d at 126. Indeed, on a motion for summary judgment, the "sole function of the presiding justice is to determine whether there is a disputed factual issue, not to decide such an issue if found to exist." *Id.*, quoting *Levesque v. Chan*, 569 A.2d 600, 601 (Me. 1990). "If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law." *Arrow Fastener*, 2007 ME

34, ¶ 18, 917 A.2d at 127; *see also Bouchard v. Am. Orthodontics*, 661 A.2d 1143, 1144-45 (Me. 1995).

In the words of the *Lever* court, "competing versions of the truth" exist in the instant case. The parties disagree about whether, or to what extent, Crawford has repaid the personal loan to Ricker. The parties also disagree as to many of the material facts surrounding the enforceability of the Purchase Agreement. Indeed, Crawford has raised several defenses to enforcement of the Purchase Agreement, including failure of consideration (presumably because Ricker has since auctioned off the business), estoppel, waiver, breach of contract by the Plaintiffs and impossibility (relating to Crawford's inability to gain access to information at The Fitness Barn after December 2006 that she maintains was necessary for her to complete the sale). It is not for this Court to decide whether any of these defenses is sufficient to permit Crawford to avoid the contract. Indeed, as none of these defenses is "flatly insufficient to support a judgment" in favor of Crawford, *see Arrow Fastener*, 2007 ME 34, ¶ 18, 917 A.2d at 127, this Court must allow a fact-finder at trial to weigh the evidence and decide which "competing version of the truth" to believe.

While this Court denies the Plaintiffs' Motion for Summary Judgment, it grants Ricker's Motion for Subsequent Attachment. Indeed, even on the record as set forth above, there is a reasonable likelihood that Ricker will recover on the personal loan he made to Crawford. Both Ricker and Crawford acknowledge that payment was made to Crawford in the amount of $40,000.00 and Ricker has provided the Court with proof that such payment was indeed made (namely, in the form of the canceled check). Crawford, however, admittedly can provide no proof to substantiate her claim that she has repaid at

least $20,000.00. Affidavit of Megan Crawford, ¶ 15 ("I do not have documentation of these payments"). The Court also notes that Crawford could have filed a motion to dissolve the attachment Order in the seven months since it was issued (January 30, 2007), but did not. For all the reasons stated herein, Ricker's Motion for Subsequent Attachment is hereby GRANTED.

## RECOMMENDATION

Therefore, the entry is:

Plaintiffs' Motion for Summary Judgment on all Counts is hereby DENIED.

Plaintiffs' Motion for Subsequent Attachment is hereby GRANTED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this /4th day of September, 2007.

Robert E. Crowley
Justice, Superior Court

= COURTS
.nd County
ox 287
ie 04112-0287

NICHOLAS WALSH ESQ
111 COMMERCIAL ST
PORTLAND ME 04101

' COURTS
id County
)x 287
e 04112-0287

JAMES HUNT ESQ
ROBINSON KRIGER & MCCALLUM
PO BOX 568
PORTLAND ME 04112