ENTERED SEP 0 8 2014

STATE OF MAINE                           SUPERIOR COURT
CUMBERLAND, ss                           CIVIL ACTION
                                         DOCKET NO. CV-11-492
                                         JAW-CUM - 9-3-14

JAMES P. HOWANIEC,

            Plaintiff

v.                                       DECISION AND ORDER

DANIEL G. LILLEY, Esq., P.A.,
JOHN FLYNN, III, Esq., and
TROUBH HEISLER, P.A.

            Defendants
                                         STATE OF MAINE
                                         Cumberland
                                         AUG 26 2014
                                         RECEIVED

## INTRODUCTION

This case involves the manner in which trial counsel, John Flynn ("Flynn"), and

referring counsel, James Howaniec ("Howaniec"), shall share fees, if at all, when trial

counsel leaves the first firm, Troubh Heisler ("TH"), with whom the referral agreement

was struck and tries the case while at second firm, Daniel G. Lilley, P.A. ("Lilley"), that

does not have an agreement with referring attorney. Howaniec filed a motion for partial

summary judgment against Flynn and Lilley for recovery of a sum he asserts he is owed

as a referral fee in the matter of *Paige v. Maine Medical Center*.[1]

Howaniec contends that his client signed a referral agreement entitling him to a

share in the gross fees paid to the attorneys. He asserts that because the total attorney's

---

[1] This is a consolidated case. In this Decision and Order the court resolves the claims of James Howaniec against Lilley and Flynn. His claims against TH remain outstanding. The court issues today and separately a Decision and Order in the Troubh Heisler v. Lilley and Flynn portion of this consolidated matter.

fees generated in the case and paid to Lilley amounted to $172,906.86 that he should be paid thirty percent (30%) of the gross fee, which he calculates to be a sum of $51,872.06.

Howaniec referred the Paiges' medical malpractice case to William McKinley ("McKinley") at TH. TH agreed in 2002 to pay Howaniec a 30% referral fee. TH does not contest that there was a fee sharing arrangement under which TH was to pay Howaniec 30% of attorney's fees received. Subsequently, when Flynn who had become the primary attorney on the Paige case moved from TH to Lilley's office, TH, Flynn and Lilley signed a memorandum of understanding for the sharing of fees in the *Paige* case.

Howaniec filed a five-count complaint seeking a declaratory judgment, equitable accounting, breach of contract, conversion, and unjust enrichment to collect his share of the attorneys' fees. Howaniec's partial motion for summary judgment on Counts I, IV and V seeks a declaration that his portion of the contingency fee in the amount of $51,872.06 is his property, that Lilley and Flynn have converted his property to his detriment and refuse to pay the fee, and Lilley and Flynn have been unjustly enriched and it is unjust and inequitable for Lilley and Flynn to retain the entire fee without paying him his share of the contingency fee. For his claims against Lilley and Flynn, Howaniec relies on the 2002 fee sharing agreement that TH had with Paige and a 2009 memorandum of understanding between Flynn and Lilley and a 2009 agreement between Flynn, Lilley and TH concerning the sharing of fees in the *Paige* case.

Lilley filed a cross-claim against Flynn and TH and opposed Howaniec's motion, stating that he never signed an agreement with Howaniec and is entitled to be indemnified from Flynn and TH. Lilley also asserts that Howaniec has failed to produce any admissible evidence of a fee sharing agreement. (LSMF ¶ 4.) According to Lilley,

2

Howaniec cannot make his case that there was a fee sharing agreement by relying on inadmissible evidence, including (1) a letter from William McKinley, one of Flynn's former partners at TH, (2) an unsigned contingent fee agreement generated from TH's computer files or (3) an e-mail to Flynn from McKinley. In any case, Lilley argues that Howaniec's dispute is with TH and not him.

Flynn filed an answer and cross claim against Lilley and TH, opposed Howaniec's motion, and filed a cross motion requesting summary judgment against TH and Lilley, claiming that Flynn never entered into any agreement with Howaniec and that Howaniec's remedy is against TH. Flynn, like Lilley, argues that there is no signed contingency fee agreement between TH and Paige or Howaniec. In light of the evidence discussed below, the court finds this argument disingenuous.

TH filed an answer with defenses and a counterclaim, alleging that it only agreed to pay Howaniec on a 30% basis of any fee amount received by TH and then only on a pay-when-paid basis. TH states that it has never been paid and it seeks payment in TH's separate motion for summary judgment. TH seeks a declaratory judgment that it is only obligated to pay Howaniec 30% of net cash after fees and expenses actually received by TH from either or both of Lilley or Flynn. Later in the case, TH altered its position, arguing that Howaniec had an agreement with Flynn through TH and with the client Pam Paige. TH argues that the Howaniec-Flynn-Paige agreement was not altered or affected in any way when Flynn relocated his practice to Lilley's office. According to TH, Howaniec is due 30% of the *Paige* fee from Flynn as originally agreed, and that sum is $51,872.06. According to TH, it is entitled to a separate fee of $57,059.26 under the 2009 agreement between Flynn, Lilley and TH.

3

The only questions raised by this motion are whether Flynn or Lilley owe a referral fee to Howaniec. There are no material facts in dispute regarding the original fee sharing agreement because Flynn and Lilley have not properly controverted the factual allegations concerning the fee sharing agreement related to Howaniec. In any event, neither Flynn nor Lilley were a party to the original fee sharing agreement.

## STATEMENT OF UNDISPUTED FACTS

The parties' statements of material facts and the applicable rules of summary judgment practice permit the court to find the following facts as undisputed, unless otherwise stated.

Beginning on or about January 2002, TH undertook the representation of a medical malpractice plaintiff, Pam Paige. On or about March 12, 2002, McKinley sent an engagement letter to his client, Pam Paige, asking her to sign and return the letter to TH. The letter states,

> I wanted to outline exactly where we are going with this case. Obviously, I will take this matter on a contingency fee basis. This should also confirm our understanding that we will split my firm's fee with Jim Howaniec. We will split the fee on a 70-30 basis, with my firm receiving 70% and Mr. Howaniec receiving 30% as a referral fee.

(HSMF ¶ 7, Ex. 2B.) The client signed the letter as "SEEN AND AGREED TO: /s/ Pam Paige." (HSMF ¶ 8, Ex. 2B.) Thus, TH and Paige agreed that TH would split its firm's fee with Howaniec on a 70-30 basis. An unsigned copy of a contingency fee agreement[2] that was produced from TH computer records verifies that the fees would be split between TH and Howaniec with the firm receiving 70% and Howaniec 30%. (HSMF 6

---

[2] No party has produced a signed copy of the contingency fee agreement between Paige and TH; the only copy produced is the unsigned copy generated from TH's computer files. There is however the uncontroverted affidavit of Laura Combs, stating that she saw and provided to Lilley the original, signed agreement in the *Paige* file while she was working at Lilley's office.

4

Ex. 2A.) The agreement does not anticipate or address what would happen in the event the *Paige* case left TH.[3]

Prior to Flynn's resignation from TH, Flynn had replaced McKinley and was the primary attorney working on the *Paige* case for TH. (HSMF ¶ 12.) When Flynn left TH to practice with Lilley, the client Paige elected to remain with Flynn and her case went with Flynn to Lilley's office. (HSMF ¶ 14.)

The jury award in *Paige* was $350,000 and there was pre- and post-judgment interest on the verdict of $82,267.17, resulting in an adjusted gross judgment of $432,267.17. (HSMF ¶ 4.) Flynn filed various affidavits with the court in seeking approval of attorney's fees. Flynn admitted in his filings in that court that there was a contingency fee agreement entered into between Paige and TH. (HRSMF ¶ 1.)[4] Flynn admits in the pending case that he was not the originating attorney at TH, and that he did not become involved in the *Paige* case until 6 or 8 months later. McKinley was the originating attorney. Regardless, the uncontested facts are that the agreement to split the *Paige* fee with Howaniec was made with TH when McKinley still had the case and Flynn knew of that fee sharing agreement.

In support of his Petition for Approval of Attorney's Fees, Flynn filed affidavits of Mr. and Mrs. Paige, stating that they executed a contingent fee agreement with TH,

---

[3] TH, however, ensured that when Flynn left TH to go to Lilley's Office, TH would be protected and be paid a referral fee. *See* Decision and Order of this date in *Troubh Heisler v. Lilley and Flynn*, CUM-CV-11-492.

[4] In paragraph 4 of the petition that Flynn submitted to the Superior Court with respect to his Petition for Approval of Attorney Fees in CUM-CV-04-102, Flynn averred,

> At the time the Notice of Claim was filed, Plaintiff's attorney, John P. Flynn, III, Esq., Maine Bar No. 8462, was a shareholder in the law firm Troubh Heisler of Portland, Maine. At the commencement of the representation, Plaintiffs executed a contingent fee agreement with Troubh Heisler in accordance with the Maine Bar Rule 8.

(HRSMF ¶ 1.)

they signed a contingent fee agreement with Flynn and Lilley when Flynn relocated to Lilley's office, and they understood that a portion of the attorney's fees received by Flynn and Lilley were to be shared with TH as their former attorneys. (HRSMF ¶ 1.)[5] Thus, the Paiges signed a contingency fee agreement with TH and then a new contingency fee agreement with Flynn and Lilley. The Paiges' affidavits are silent with respect to any referral fees that were to be paid to Howaniec under either contingency fee agreement.

It is also not contested that Lilley knew that TH had a contingent fee agreement arising out of the *Paige* matter. A Laura Combs worked as a Legal Assistant for Lilley and Flynn at the Law Offices of Daniel G. Lilley, P.A., from February 2010 to October 2010. Ms. Combs avers in her affidavit filed in the pending case that she worked on the *Paige v. Maine Medical Center* case and took the oath of the Paiges with respect to their affidavits filed in support of the Petition for Approval of Attorneys' Fees. (HRSMF ¶ 1.)

---

[5] Ms. Paige stated in paragraphs 2, 7, 8, 9 and 13 of her affidavit that,

In 2003, and after consulting with other attorneys, I was referred to the Portland, Maine law firm of Troubh Heisler, where attorney John P. Flynn, III, Esq. accepted me and my claim for representation. I executed a contingent fee agreement with Troubh Heisler.

When attorney Flynn chose to relocate his practice to the Daniel G. Lilley Law Offices in February 2009, my husband and I chose to keep our cases with him.

I signed a subsequent attorney-client contingent fee agreement with attorney Flynn and the Daniel G. Lilley Offices, P.A., after attorney Flynn had relocated. I reviewed and discussed the contingent fee agreement with attorney Flynn prior to signing it, and agree with the terms contained within it.

I understand that the contingent fee agreement calls for payment of a forty percent (40%) from gross recovery for attorneys' fees.

I understand that a portion of the attorneys' fees received by attorney Flynn and the Daniel G. Lilley Offices, P.A., will be shared with Troubh Heisler, as my former attorneys.

(HRSMF ¶ 1.) Mr. Paige's affidavit reads almost verbatim to Ms. Paige's affidavit.

6

More importantly, she states that Lilley instructed her to research each of Flynn's cases that he brought with him from TH to determine if a contingency fee agreement had been executed between TH and the client, she found an original contingency fee agreement with TH signed by the Paiges and she gave the original or a copy of the original to Lilley. Neither Flynn nor Lilley have properly challenged Ms. Coombs' allegations.

## ISSUES

### 1. Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178).

In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. Rule 56(h) requires a party that is opposing a motion for summary judgment to support any qualifications or denials of the moving party's statement of material facts with record citations.[6] *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6 n.5, 770 A.2d 653.

---

[6] Rule 56(h)(2) provides,

> The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate

7

"All facts not properly controverted in accordance with this rule are deemed admitted." *Rogers v. Jackson*, 2002 ME 140 ¶ 7, 840 A.2d 379 (*citing* M.R. Civ. P. 56(h)(4)).[7]

2.    The Contingent Fee Agreement between TH and Paige

Lilley and Flynn contend that because no original signed written fee agreement has been produced, there is no enforceable fee agreement. They argue the best evidence rule requires production of the original contract. On this issue, there is no genuine issue of material fact regarding the execution of the original contingent fee agreement between TH and Paige and another agreement between TH and Ms. Paige as reflected in the engagement letter, referencing Howaniec and assuring Ms. Paige that Howaniec would receive 30% of the fee earned by TH on the *Paige* action.

Paige agreed to McKinley's proposal that TH would split its firms fee with Howaniec by paying him a 30% referral fee. (HSMF ¶¶ 7, 8.) Although the then existing Bar Rule did not require a client's written consent to a fee sharing agreement, the fee sharing agreement between TH and Howaniec was fully disclosed in writing to the client who consented to the fee sharing arrangement in writing.

According to Coombs whose testimony was not properly controverted, the signed copy of the original 2002 contingency fee agreement between TH and the Paiges was in

---

numbered paragraphs and supported by a record citation as required by paragraph (4) of this rule.
In this case, the parties attempted, on occasion, to rebut opposing parties' statement of material facts with conclusory allegations and arguments and without support in the record. This failure simplified the court's finding of uncontroverted facts.
[7] The court rejects Lilley's argument that Rule 56 requires more than reliance on the pleadings, particularly where TH tries to bind Lilley on the basis of an answer of Flynn's. Rule 56(e) provides,
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of that party's pleading, but must respond by affidavits or as otherwise provided in this rule, setting forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

8

the *Paige* file that traveled with Flynn to Lilley's office. Since neither Flynn nor Lilley have contradicted the statements of Combs concerning the contingency fee agreement between TH and the Paiges, nor produced a copy of that contingency fee agreement, the court accepts the copy generated from TH's computer files as the best evidence of the contingency fee agreement.

The TH copy of the fee agreement states,

(4) Reasonable compensation on the foregoing contingency is to be paid by the Client to the Attorneys, but such compensation (including that of any associated counsel) is not to exceed the following maximum percentage of the gross amount collected: Thirty-three and one-third percent (33 1/3%) of the first $100,000 of recovery, twenty-five percent (25%) of the next $100,000 of recovery, and twenty percent (20%) of all recovery thereafter. However, counsel will reserve the right to petition the court for one-third of all recovery, and Client will support this effort. The fees will be split seventy-two (70%) to Troubh Heisler & Pampiano and twenty-eight (30%) to co-counsel, James Howaniec. (sic)

(HRSMF ¶ 3.) The contingency fee agreement between TH and the Paiges and referencing Howaniec was in the possession of both Flynn and Lilley after the *Paige* file traveled to Lilley's office, whether or not either read the agreement. The 2002 engagement letter signed by the client and the contingency fee agreement confirm that the fees were to be split between TH and Howaniec on a 70-30% basis.

Howaniec also relies on a 2009 memorandum of understanding between Lilley and Flynn to support his claim that Lilley and Flynn knew there were referral fees due in cases that Flynn brought with him to Lilley's Office. Lilley and Flynn signed a memorandum of understanding on January 17, 2009 concerning, in part, that Flynn brought with him to Lilley's office a number of cases. Section III of that agreement states, "For any such cases Mr. Flynn brings with him to Daniel G. Lilley Law Office, it also expressly acknowledge and understood that he may owe a portion of the attorney's

9

fees generated by his representation to Troubh Heilser, P.A., and/or referring attorneys."
(HSMF ¶ 26, Ex. 2C.) This memorandum of understanding does not add to Howaniec's argument that because Flynn and Lilley knew there were referral fees due in the *Paige* case, they are obligated to pay him the 30% of the gross fees they received.

Nor does the 2009 memorandum of agreement (MOA or 2009 Agreement) assist Howaniec. On February 5, 2009, TH, Flynn and Lilley executed an agreement related to several cases that went with Flynn at the time of his transition to Lilley, including the *Paige* action. (HSMF ¶ 8.) That agreement states "that Flynn and Lilley will pay a referral fee to Troubh Heisler if and when any legal fees are paid to Flynn and/or Lilley." (HSMF ¶ 8.) The parties to that agreement agreed to pay a referral fee to TH for the *Paige* case. Howaniec was not a party to that agreement and his referral fee is not referenced in the agreement.

There is no disputed issue of material fact with regard to the terms of the 2002 fee referral agreement under which Howaniec asserts his right to fees from TH; however, he has no rights under either of the 2009 agreements. There was no anticipation that Howaniec would continue to participate in the representation of the Paiges and Howaniec has presented no evidence of continuing work that he performed on the *Paige* matter. There was no agreement with TH about what would happen if the *Paige* file left the law firm. Once it was determined that the *Paige* file was to leave TH, the only agreement was between Lilley, Flynn and TH. There was no discussion in their agreement about a referral fee owed to Howaniec. There is no evidence that there was an agreement for Flynn or Lilley to pay a referral fee to Howaniec once the *Paige* matter left TH. At best,

10

Howaniec may have a right to a referral fee pursuant to the 2002 agreement between TH and the Paiges.

The entry is:

Howaniec's motion for partial summary judgment against Flynn and Lilley is DENIED. Judgment will enter for defendants Flynn and Lilley on all Counts of Howaniec's Complaint.

Date: August 26, 2014

Joyce A. Wheeler, Justice

ENTERED
09/03/14
lmc/

11

Troubh Heisler PA-Gerald Petruccelli Esq
James Howaniec-Scott Lynch Esq
Daniel G Lilley-Walter McKee Esq
John Flynn-Mark Franco Esq