Nat H. Hentel, J.
Defendant airlines moves for summary judgment on the ground that no master-servant relationship existed between defendant and Dallys Travel, Inc., a travel agent. Plaintiff arranged for two full fare and one half fare round trips from New York City to Honolulu with Dallys Travel Bureau. The latter issued the requested tickets after plaintiff paid $1,449 for same, by taking a standard airline ticket blank and imprinting thereon the carrier’s identification plate logo, which in this case was American Airlines. The ticket then reads: "Passenger ticket and baggage check — issued by AMERICAN AIRLINES.” Further, the said ticket bears the legend: "It is unlawful td purchase or resell this ticket from/to any entity other than the issuing carrier or its authorized agents.” On the face of the ticket, it is also stated that the same is "issued subject to conditions of contract on passenger’s coupon.” On the reverse side of the ticket there is imprinted: "Issued by Carrier whose name is in the 'issued by’ section on the face of the Passenger Ticket and Baggage Check.” The ticket was issued on December 27, 1974 for a flight to Honolulu scheduled for an open date.
In or about January, 1975 Dallys apparently went out of business and, thereafter, none of its principals or employees apparently could be located. Prior to this, Dallys had entered into a sales agency agreement with the Air Traffic Conference of America (known as ATC), as late as May 20, 1974 to which agreement the defendant was a participant. Dallys, pursuant to this agreement, did not transmit any of plaintiff’s air fare money received to the defendant. In March, 1975, plaintiff, having been unsuccessful in seeking a refund of the fare paid from Dallys, went directly to defendant and sought the refund from that quarter. On March 18, 1975, defendant picked up plaintiff’s tickets, and issued to him a ticket redemption certificate. Now, defendant refuses to make refund on the theory that Dallys was an independent broker and not its agent, but rather plaintiff’s agent in the transaction, and thus plaintiff is suing the wrong party. Defendant cites in support of these affirmative defenses, Bucholtz v Sirotkin Travel Ltd. (80 Misc 2d 333); Siegel v Council of Long Is. Educators (75 Misc 2d 750); Levine v British Overseas Airways Corp. (66 Misc 2d 766); Simpson v Compagnie Nationale Air France (42 Ill 2d 496); Antar v Trans World Airlines (66 Misc 2d 93) all of which are distinguishable from this case because of the Air Traffic Conference Sales Agency Agreement annexed to defendant’s moving papers.
*761 The said agreement provides, amongst other things, the following, which the court places specific emphasis upon:
(1) "The Agent (Dallys) shall exercise the authority granted by this Agreement, and present itself as an agent of the Carrier”.
(2) The Carrier (American Airlines) as a member of the Air Traffic Conference is bound by the Agreement.
(3) As authorized by the Carrier, agent may use the identification plate (logo) of the Carrier as issued by the Carrier, but said plate shall remain the property of the Carrier.
(4) "The Agent may represent himself on letterheads, advertising, telephone listings and office signs and otherwise as an 'Agent’ or 'Travel Agent’ representing the Carrier”.
(5) "The Agent shall report and remit three times each month for all transportation services sold under the Agreement to a bank designated by the ATC.”
(6) All moneys, less applicable commissions to which Agent is entitled and collected by Agent "'shall be the property of the Carrier, and shall be held in trust by the Agent until satisfactorily accounted for to the Carrier. ” (Emphasis supplied.)
(7) The Agent shall maintain a bond for the joint and several benefit of the members of the ATC in a minimum amount of $10,000.
With respect to this latter provision, during oral argument of this motion before the court, defendant’s attorney admitted that Dallys’ abdication of its business responsibilities had caused its bond to be completely depleted and thus there was none available for plaintiff’s case. Further, defendant’s attorney admitted that in prior cases of this type, defendant had, nevertheless, paid back the customer out of its own funds as a matter of good customer relations, but had decided to draw the line in this case as an issue of some importance to defendant in order to establish a limit to any alleged liability.
Under these circumstances, the court finds ample grounds to distinguish defendant’s cited legal authorities in the following ways: In the Bucholtz and Siegel cases (supra), both cases originated in Small Claims Court, and plaintiffs recovered from defendant travel agents who had sold package travel and tour arrangements and had employed sub-agent wholesalers. The Appellate Term, in affirming the lower court judgments, held that a travel agent is liable for his acts, even though the other party knows he is acting as agent, if the identity of the *762 principal is not disclosed (Siegel, supra); nor can the travel agent escape liability by imputing knowledge of industry’s practice of employing wholesalers to make ground tours and accommodations for the customer (Bucholtz, 80 Misc 2d 333, supra). In both cases, finding in favor of plaintiff customers, the court relied upon the principles laid down in Unger v Travel Arrangements (25 AD2d 40). (Also see 2 NY Jur, Agency, §§ 303, 304.) An agent is liable as a principal if the fact of the agency is not known to the customer. If the customer had such knowledge, he cannot recover from the travel agent, on the ground of undisclosed principal. The court denied the granting of the motion for summary judgment in favor of plaintiff on the ground of existing triable issues of fact as to whether the principal was known to plaintiff customer.
In Levine (66 Misc 2d 820, supra) the court dismissed defendant’s argument that the travel agent was an agent of plaintiff customer and permitted recovery, even though defendant mailed refund to the agent. In the Simpson (42 Ill 2d 496, supra) and Antar (66 Misc 2d 93, supra) cases, the court had found that the carrier had terminated its authority to the travel agents, and that plaintiff customer treated travel agent as his own agent for purposes of arranging the tour. In the instant case, however, plaintiff knew of the agency and demanded a refund of the money paid to the travel agent directly from American Airlines, who, in turn, issued a ticket redemption certificate. The record of the cases relied upon by defendant is not clear as to whether the court in these cases was aware of the existence of the Air Traffic Conference Sales Agency Agreement, which had been signed by "ATC”, as a representative of the carrier and the travel agent (Dallys).
A recent decision by Mr. Justice Greenfield, Supreme Court, New York County, Air Traffic Conference v Downtown Travel Center (87 Misc 2d 151) upheld the validity of the ATC sales agency agreement, and held that, under its terms, the travel agent is regarded as a trustee of the proceeds of its ticket sales and, thus, as having no beneficial or equitable interest therein. This court concurs with the reasoning stated and, consequently, concludes that, in issuing the ticket redemption certificate to plaintiff, American Airlines had ratified its agency with "Dallys”. Thus, defendant treated the moneys paid by plaintiff to Dallys as its property, and is liable for restitution.
*763 In view of the provisions of the ATC Sales Agency Agreement, the court distinctly feels that defendant was most willing to accept all of the benefits under the agreement, including the promotion and sale of its transportation facilities, but was unwilling to accept any possible disadvantages which might arise. It called the travel agent under the agreement its agent; it clothed the agent with authority to issue tickets on its behalf, and made the agent its depository for the proceeds of ticket sales. It held itself out, for all intents and purposes, as the principal with whom the unwary customer was actually dealing. It cannot now retire behind a curtain of limited liability on the theory that one, such as Dallys, was its own independent contractor and broker serving the interests only of itself and its customers when, in fact, such agent was serving the primary interests of the carrier involved.
Accordingly, motion for summary judgment dismissing the complaint is denied, and, on its own motion pursuant to CPLR 3212 (subd [b]) the court directs summary judgment in the sum of $1,449, plus interest from date of demand of refund, plus the costs of this motion, to be rendered in favor of plaintiff.