STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET CV-13-29
$J_{f|W|}$ CUM -7/3/2013

PAMELA BRIDGAM
                    Plaintiff

v.                                              DECISION AND ORDER

ROBERT M.A. NADEAU, ESQ,


STATE OF MAINE
Cumberland ss Clerk's Office

JUL 08 2013

RECEIVED

                    Defendant

Pamela Bridgham ("Bridgham"), *pro se,* has filed a complaint against her former

attorney, Robert M.A. Nadeau, Esq. ("Nadeau"), alleging legal malpractice.  Nadeau, *pro*

*se* as well, filed an answer to the complaint and asserted defenses of collateral estoppel,

*res judicata*, absence of ongoing duty, and failure of adequate consideration.  Subsequent

to the answer Nadeau filed a motion for judgment on the pleading or in the alternative a

motion for more definite statement.  Both motions are currently before this Court.

**ORDER**

I. *Standard of Review*

When a defendant moves for a judgment on the pleadings, his motion is the

equivalent of a motion to dismiss for failure to state a claim and tests the complaint's

sufficiency. *Monopoly, Inc. v. Aldrich*, 683 A. 2d 506 (Me. 1996).  "Defendant's motion

for judgment on the pleadings is nothing more than a motion under M.R.Civ.P. 12(b)(6)

to dismiss the complaint for failure to state a claim upon which relief can be granted."

*Cunningham v. Haza,* 538 A.2d 265, 267 (Me.1988)(citation omitted).  Thus, a motion to

dismiss pursuant to both M.R. Civ. P. 12(b)(6) and 12(c) "tests the legal sufficiency of the complaint and, on such a challenge, 'the material allegations of the complaint must be taken as admitted.' " *Shaw v. S. Aroostook Comm. Sch. Dist.,* 683 A.2d 502, 503 (Me. 1996) (quoting *McAfee v. Cole,* 637 A.2d 463, 465 (Me. 1994)); *Camps Newfound/Owatonna Corp. v. Town of Harrison,* 1998 ME 20, ¶ 3, 705 A.2d 1109, 1111 (quoting *Shaw,* 683 A.2d at 503). When reviewing a motion to dismiss, this court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Shaw,* 683 A.2d at 503. A dismissal under M.R. Civ. P. 12(c) will not be granted "unless 'it appears to a certainty' that under no facts that could be proved in support of the claim is the plaintiff entitled to relief." *Monopoly, Inc. v. Aldrich,* 683 A. 2d. 506 (quoting *Cunningham v. Haza,* 538 A.2d 265, 267 (Me.1988)).

## II. Matters Outside the Pleadings

As an initial matter, Defendant's motion is styled as one for judgment on the pleadings, but he makes clear that to the extent he raises issues outside the pleadings he moves in the alternative for summary judgment. It is within the Court's discretion to treat a motion for judgment on the pleadings as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." M.R. Civ. P. 12(c). If this action is taken, the motion is then "disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* Defendant filed no statement of material facts with his brief as required by M.R. Civ. P. 56(h)(1). As a result, the Court cannot, based on the materials filed with the present motion, treat Defendant's motion as one for summary

2

judgment. As a result, Defendant's motion shall be treated solely as one for judgment on the pleadings and any matters outside the pleadings shall be excluded for purposes of this motion.

*III. Legal Malpractice*

Modern notice pleading requires that a complaint provide fair notice of a claim and a generalized statement of the facts may fulfill this function. *E.N. Nason, Inc. v. Land-Ho Dev. Corp.,* 403 A.2d 1173, 1177 (Me. 1979). When a Maine Rule of Civil Procedure is identical to its federal counterpart, a Maine court should value constructions and comments on the federal rule as aids in construing the parallel Maine rule. *Bean v. Cummings,* 2008 ME 18, ¶ 11, 939 A.2d 676. In *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009), which concerned the sufficiency of a complaint in the context of a federal 12(b)(6) challenge, the Supreme Court commented on the sufficiency requirements of notice pleading. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). The Court held that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id.* The Court explained that the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

Applying the *Ashcroft* standards to the single count complaint that alleges legal malpractice, Bridgham's complaint is insufficient. The complaint does little more than make gauzy accusations and draw legal conclusions. Nowhere does the plaintiff allege any facts that show how any of the defendant's actions were the proximate cause of her

3

injury or loss. Additionally, the plaintiff has failed to show what if any injury she has actually suffered by the defendant's withdrawal as Bridgham's counsel before any complaint was ever filed. Bridgham alleges damages in the amount of $1,000,000 dollars, but fails to state a claim upon which that relief may be granted. *See* M.R. Civ. P 8(a).

"In legal malpractice cases, the plaintiff must show (1) a breach by the defendant attorney of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of the duty proximately caused an injury or loss to the plaintiff." *Niehoff v. Shankman & Associates Legal Center, P.A.*, 2000 ME 214, ¶ 7, 763 A.2d 121, 124. To satisfy the proximate cause element of legal malpractice, a plaintiff must show that she "could have been successful in the initial suit [without her attorney's negligence]." *Jourdain v. Dineen*, 527 A.2d 1304, 1306 (Me. 1987). "The plaintiff must therefore submit proof of that claim to the jury as a 'trial within a trial' of the attorney malpractice action." *Id.*

Because of the scarcity of relevant facts in plaintiff's complaint the Court cannot find that it states a plausible claim for relief and dismisses the plaintiff's complaint for failure to state a claim upon which relief can be granted. The complaint is dismissed for insufficiency of the claim because "it appears to a certainty" that under no facts that could be proved in support of the claim is the plaintiff entitled to relief. *Monopoly, Inc. v. Aldrich*, 683 A. 2d. 506 (quoting *Cunningham v. Haza*, 538 A.2d 265, 267 (Me.1988)).

Therefore, the entry is:

1. Defendant's Motion for judgment on the pleadings is GRANTED and Plaintiff's complaint is dismissed without prejudice.

4

2.  Defendant's Motion for Summary Judgment is DENIED for the reasons previously stated.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: July 3, 2013

_____
Joyce Wheeler
Justice, Superior Court

Plaintiff-Pamela Bridgham-Pro Se
Defendant-Robert MA Nadeau Esq-appeared
Pro Se

5

STATE OF MAINE                    BUSINESS AND CONSUMER COURT

Cumberland, ss.                   AMH -CUM - 3/13/2014

PAUL REMMES and HOLLY REMMES

Plaintiffs

v.                                Docket No. BCD-CV-13-29

MARK TRAVEL CORPORATION and
BETH ROGERS a/k/a Beth McInnis
d/b/a TravelWise

Defendants

---

ROBERT H. BEGIN and LUCY BEGIN

Plaintiffs

v.                                Docket No. BCD-CV-13-34

MARK TRAVEL CORPORATION and
BETH ROGERS a/k/a Beth McInnis
d/b/a Travelwise

Defendants

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Before the court in these consolidated cases are motions and cross-motions for summary judgment filed by the Plaintiffs and Defendant Mark Travel Corporation. Oral argument on the motions was held February 28, 2014.

### Factual Background

The underlying material facts are largely undisputed. The following summary is based on the parties' Statements of Material Facts and affidavits.

Plaintiffs Paul and Holly Remmes ["the Remmes"] are individual residents of Maine, as are Plaintiffs Robert and Lucy Begin ["the Begins"]. Defendant Mark Travel Corporation

1

["Mark Travel"] is a corporation that functions as a tour operator selling leisure tour and travel products to consumers, with its principal place of business in Milwaukee, Wisconsin. Defendant Beth Rogers ["Rogers"] is a travel agent who operated an unincorporated travel agency in Saco, Maine, under the name TravelWise.[1]

The summary judgment record does not reveal any contract or any other ongoing association or connection between Mark Travel and TravelWise. As a tour operator, Mark Travel makes travel arrangements for consumers directly but also through travel agents such as TravelWise.

Holly Remmes contacted TravelWise through Beth Rogers in August or September 2011 regarding an all-inclusive vacation, including accommodation in a suite large enough for a party of nine, comprising Paul and Holly Remmes, their children and several friends. Ms. Rogers responded with information about a facility called Hard Rock Resort & Casino in Punta Cana, Dominican Republic, that has accommodations meeting the Plaintiffs' requirements. Paul Remmes followed up with on-line research about the Hard Rock facility. The suite Ms. Rogers had described could not be reserved on-line, and when he asked Ms. Rogers about booking the suite, she told him the suite could only be booked through a travel agent.

The Remmes decided to book the trip through TravelWise. Ms. Rogers told them they could save some money by giving her a check as opposed to using credit cards to pay, so they decided to pay by check instead of by credit card. On September 9, 2011, Paul Remmes gave Ms. Rogers a check payable to TravelWise for $26,517, covering the full cost of airfare and accommodations at Hard Rock for himself and his wife, as well as their children and two friends. The planned vacation was to begin the week of June 20, 2012.

---

[1] Rogers and TravelWise have not appeared in these cases.

At some point, the Remmes invited their friends, the Begins, to join them on the trip. The Begins contacted Ms. Rogers and asked her to book the same trip for them. Again, she suggested they pay by check to save some money instead of paying by credit card. The Begins gave her a check payable to TravelWise for $8,801.92, covering their air fare and hotel accommodations.

Ms. Rogers booked air travel and lodging at the Hard Rock Resort & Casino for all of the Plaintiffs and their traveling companions through Defendant Mark Travel. The record is silent on who made the decision to book the Plaintiffs' travel through Mark Travel, but there is no indication that any of the four Plaintiffs made the decision, so the court infers it was Ms. Rogers's decision on behalf of TravelWise. The record is also silent on why TravelWise booked the Plaintiffs' travel through Mark Travel as opposed to through another tour operator, or through a tour operator at all instead of directly with the hotel and airlines. Whatever the reasons, they may not be material, and the court infers that one reason may have been that Mark Travel through its affiliate Funjet Vacations was offering a vacation package that met the Plaintiffs' requirements.

In any case, Ms. Rogers used some of the funds that the Plaintiffs had paid by check— about $10,000 of the Remmes's payment and about $4,000 of the Begins' payment—to pay for their air fare. However, she made payment through Mark Travel for the Plaintiffs' lodging at Hard Rock Resort & Casino by charging credit cards of other TravelWise clients, without those clients' knowledge or consent. The record is silent as to what happened to the remaining funds, totaling more than $20,000, that the Plaintiffs had paid to TravelWise by check.

Effective June 1, 2012, after the TravelWise clients whose credit cards had been improperly charged contacted Mark Travel to dispute the improper charges, Mark Travel placed Travel Wise on "stop sale" status, meaning that Mark Travel would not accept further

3

bookings from TravelWise. Mark Travel reversed what it determined to be fraudulent charges and cancelled the Plaintiffs' reservations at the Hard Rock facility, consistent with Mark Travel's policy when bookings are made but payment is not received. When it took these actions, Mark Travel had not paid Hard Rock Resort & Casino and did not incur any monetary fees, penalties or costs of any kind in cancelling the Plaintiffs' hotel reservations.

Meanwhile, in early June 2012, as a result of rumors about TravelWise circulating in the Plaintiffs' community, the Plaintiffs attempted to ascertain the status of their reservations. Initially, all four Plaintiffs were advised by representatives of Mark Travel and the Hard Rock facility that their reservations were "all set," meaning confirmed and available to be used, but on June 8 they learned that there could be "problems" with their reservations. On June 11, 2012, Plaintiffs learned from an employee of Mark Travel, Brenda Bullock, that the payments sent by TravelWise for the Plaintiffs' accommodations had proved fraudulent and that the Plaintiffs' reservations had been cancelled for non-payment.

Understandably shocked and dismayed, given that they were just a week away from beginning a long-planned vacation, the Plaintiffs engaged in a number of conversations with Mark Travel focused on rebooking their hotel accommodations. Mark Travel agreed to assist, but only if the Plaintiffs made payment (again) for their hotel accommodations and also signed a release. Reluctantly and feeling coerced, the Plaintiffs agreed to these terms. On June 14, 2012, Remmes and Robert Begin each signed the Release and Authorization that Mark Travel had forward to them to sign as a condition of Mark Travel rebooking the Plaintiffs' accommodations at the Hard Rock facility.[2] In addition to releasing and discharging claims against Mark Travel and its affiliated persons and entities, each Release and Authorization

---

[2] Only Robert Begin's and Paul Remmes's signatures appear on the releases. However, because the releases were given at the time Messrs. Begins and Remmes authorized the credit card payments to Mark Travel, the releases, if enforced, would in effect bar the claims of all four Plaintiffs to recover those payments.

authorized Mark Travel to charge the Plaintiffs' credit cards for the outstanding amounts due for their Hard Rock accommodations--$4,215.31 in the case of the Begins and $16,926.15 in the case of the Remmes.

Although the Hard Rock Resort & Casino's room rates had increased since the original, now-cancelled booking, Mark Travel negotiated the rebooking of Plaintiffs' lodging at the same rate the Plaintiffs were originally charged.

In each of these cases, the Plaintiffs have alleged breach of contract, economic duress and violations of the Maine Unfair Trade Practices Act (UTPA), 5 M.R.S. §§ 205-A et seq.

Analysis

*Standard of Review*

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." *See also Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. However, a party wishing to avoid summary judgment must present a prima facie case for each element of the claim or defense on which it has the burden of persuasion. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178).

5

"If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶7, 784 A.2d 18. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

This case presents cross-motions for summary judgment filed by all parties, indicating that the parties agree that summary judgment is appropriate.

*Plaintiffs' Breach of Contract Claim*

Mark Travel acknowledges that it entered into two contracts with the Plaintiffs. The first came into being when Mark Travel, under the name of its affiliate Funjet Vacations, accepted their booking and issued the Plaintiffs travel documents for their vacation, including lodging at Hard Rock Resort & Casino. The second came into being when Mark Travel accepted credit card payments directly from Plaintiffs and rebooked their accommodations.

Functionally, what happened with the first contract is that Mark Travel rescinded the lodging portion of the contract for failure of consideration after determining that payment for Plaintiffs' lodging had been fraudulently charged to other people's credit cards. There is no dispute that the failure of consideration was the result of the fraudulent actions of TravelWise, through its principal Beth Rogers. No doubt Ms. Rogers was acting as agent for someone in handling the funds Plaintiffs entrusted to them; the real question is, who was the principal for whom she was acting? If Ms. Rogers was acting as agent for Mark Travel in collecting and applying Plaintiffs' payment for their lodging, then Mark Travel was not entitled to rescind the lodging component of its initial contract with Plaintiffs and the loss due to Ms. Rogers' misappropriation of Plaintiffs' funds falls on Mark Travel. On the other hand, if she was acting

6

as agent for the Plaintiffs, then Mark Travel was entitled to rescind and it is Plaintiffs who must bear the loss.

The record in this case contains nothing to indicate any contractual or agency relationship between Mark Travel and TravelWise, thereby distinguishing this case from other reported cases in which the travel agent has been deemed to be the agent of an airline, tour operator or other provider of travel services by virtue of an express agency contract. *See State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 61-62 (Mo. 1993) (en banc) (certificate of appointment appointing independent travel agency to sell and promote travel on airline rendered travel agency an agent for airline); *Rappa v. American Airlines, Inc.*, 87 Misc.2d 759, 386 N.Y.S.2d 612, 613 (N.Y.City Civ.Ct.1976) (written sales agency agreement between travel agency and airline supported finding that travel agency was agent of airline).

Likewise, the lack of any agency contract or similar relationship between Mark Travel and TravelWise removes this case from the scope of section 3.14 (c) of the Third Restatement of the Law of Agency, upon which Plaintiffs rely:

> "...a travel intermediary who purchases a plane ticket for a prospective traveler acts as the prospective traveler's agent in buying the ticket. If an airline authorizes the intermediary to issue tickets on its behalf and to collect and hold customer payments, the intermediary acts as the airline's agent in so doing."

RESTATEMENT (THIRD) OF AGENCY §314(C) (2006).

Here, there is nothing in the record indicating Mark Travel authorized Travel Wise to issue tickets or collect payments on its behalf. In fact, after Travel Wise purported to pay for Plaintiffs' travel, it was Mark Travel that issued tickets and lodging vouchers to Plaintiffs. TravelWise never issued tickets or vouchers to the Plaintiffs.

7

Likewise, there is nothing in the record indicating that Mark Travel held out TravelWise as its agent for purposes of a claim of apparent authority. Instead, the record indicates that TravelWise, acting through Ms. Rogers, was an independent travel agent.

One court, in addressing for whom a travel agent was acting, has noted that independent travel agents are more accurately termed brokers rather than agents:

> A broker is distinguished from an agent in that a broker sustains no fixed and permanent employment by, or relation to, any principal, but holds himself out for employment by the public generally, his employment in each instance being that of special agent for a single object, whereas an agent sustains a fixed and permanent relation to the principal he represents and owes a permanent and continued allegiance.

> *Simpson v. Compagnie Nationale Air France*, 42 Ill.2d 496, 499, 248 N.E.2d 117, 119 (1969), *quoting City of Chicago v. Barnett*, 404 Ill. 136, 142, 88 N.E.2d 477, 481 (1949) (citation omitted).

The general rule, applicable to brokers in fields such as real estate and insurance, is that the broker is the agent of the party that first employed the broker. 44 C.J.S. Insurance § 262. *See Dodds v. Hanover Ins. Co.*, 880 S.W.2d 311, 314 (Ark. 1994) ("a broker is primarily the agent of the person who first employs him, and where he is employed to procure insurance, he is the agent of the person for whom the insurance is procured"). This is why the existence or absence of an independent agency contract or similar pre-existing relationship between the alleged principal and the alleged agent is highly relevant. It answers the question of who first employed the alleged agent.

The Illinois Supreme Court in Simpson, *supra*, relied on that principle in deciding that the travel agent in that case was the agent of the customer, not the air carrier. 42 Ill.2d at 500, 248 N.E.2d at 120. Likewise, the New York courts have held that "where, as here, there is no proof of an independent relationship between the retail travel agent and the wholesaler, the travel agent should be considered the agent of the customer." *Bucholtz v. Sirotkin Travel*, Ltd.,

8

363 N.Y.S.2d 415, 416, (N.Y.S. App. 1974), *citing Antar v. Trans World Airlines, Inc.*, 66 Misc.2d 93, 320 N.Y.S.2d 355, *affd.* 37 A.D.2d 921, 325 N.Y.S.2d 1019.

The court concludes that TravelWise, acting through Ms. Rogers, was acting as an agent of the Plaintiffs, not as an agent of Defendant Mark Travel, in collecting, handling and applying the funds paid to TravelWise by the Plaintiffs. Thus, TravelWise's and Ms. Rogers's failure to remit funds for Plaintiffs' accommodations to Mark Travel cannot have been a breach of contract by Mark Travel, and Mark Travel was entitled to rescind the lodging portion of its contract with the Plaintiffs for nonpayment. Accordingly, Defendant Mark Travel is entitled to summary judgment on Count I of the respective complaints herein.

The Plaintiffs argue that Mark Travel should have realized that the credit card charges used to pay for the Plaintiffs' lodging at Hard Rock were questionable because the account holder names for the cards used were not the names of the Plaintiffs. Mark Travel responds by noting that the name of the payor differs from that of the traveler whenever anyone pays for anyone else's travel, and a difference in names is not a red flag in and of itself. However, even if the Plaintiffs are right, that means only that Mark Travel should have rescinded the original contract for nonpayment sooner than it did, not that it was not entitled to rescind. The only consequence of an earlier rescission might have been that the Plaintiffs would have felt under less pressure to pay a second time for their lodging and sign the releases Mark Travel insisted on, but it is speculative to suggest that an earlier rescission would have made all the difference.

*The Releases Given by Plaintiffs*

The releases given by Plaintiffs when they paid a second time for their lodging furnish an alternate basis for granting summary judgment to Mark Travel on Plaintiffs' breach of contract claims. Plaintiffs appear to concede that, if the releases are enforceable, their claims are barred. The enforceability of the releases is linked directly to the Plaintiffs' claim of

9

economic duress and their Unfair Trade Practices Act claim. As the following sections indicate, the court's view is that Mark Travel is entitled to summary judgment both on the duress claim and on the UTPA claim. Therefore, the releases are enforceable and operate as a bar to Plaintiffs' claims.

*Plaintiffs' Claim of Economic Duress*

Plaintiffs' claim for economic duress asserts that they were, in effect, coerced by Defendant Mark Travel into paying twice for their hotel accommodations, and coerced into signing releases in the course of making the second payment.

The status of economic duress as a cause of action in Maine remains in question in light of the Law Court's most recent treatment of the doctrine, *See City of Portland v. Gemini Concerts, Inc.*, 481 A.2d 180, 183 (Me.1984) ("Assuming, without deciding, that the doctrine is viable in this State...."). However, even assuming the doctrine is viable in Maine, the record does not reveal any conduct by Defendant Mark Travel that a factfinder could find to constitute economic duress.

First, Plaintiffs have not shown they had no alternative besides rebooking their hotel accommodations through Mark Travel. Mark Travel asserts, without contradiction, that it did not compel Plaintiffs to rebook their rooms through its services; rather, its position was that if the Plaintiffs chose to rebook through Mark Travel, they would have to pay for the rooms, given that no payment had been made to date, and would have to sign a release. Neither requirement, in context, constituted economic duress or business compulsion, as the doctrine sometimes is called. No threat was made and no pressure was applied—the considerable pressure that Plaintiffs undoubtedly felt arose from the situation, not from anything Mark Travel said or did.

10

The other reason why Plaintiffs' economic duress claim fails is that they have not shown that Mark Travel was responsible for the diversion of the funds that the Plaintiffs had paid to TravelWise. In *Gemini Concerts*, the Law Court observed:

Actions which are not wrongful cannot result in duress:

Whenever a party to a contract seeks the best possible terms, there can be no rescission merely upon the grounds of "driving a hard bargain." Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion.

481 A.2d 183, *quoting* S. Williston, *A Treatise on the Law of Contracts* § 1617 at 708 (3d ed. 1970) (footnote omitted). *See also, Chesire Oil Co., Inc. v. Springfield Realty Corp*, 118 N.H. 232, 385 A.2d 835 (1978) ("A contract signed because a party is bargaining under adverse conditions or in pressing want of pecuniary means is not unenforceable on account of duress if the other party is not responsible for those circumstances and did not create those necessities").

Thus, even if, contrary to what is suggested by the record, the Plaintiffs were in the position of being forced to rebook their rooms through Mark Travel, Mark Travel was within its rights to insist on payment and the releases, because it was not at fault in causing the Plaintiffs' loss of their original payment.

For these reasons, Defendant Mark Travel is entitled to summary judgment on the Plaintiffs' economic duress claim.

*Plaintiffs' Unfair Trade Practices Claim*

Plaintiffs' complaints also assert a claim under the Maine Unfair Trade Practices Act (UTPA), 5 M.R.S.A. § 213(1). For two reasons, the court renders summary judgment against Plaintiffs and in favor of Defendant. First, the Plaintiffs, who have the burden on this claim, have not made a *prima facie* showing that Defendant Mark Travel engaged in any unfair trade practice or misleading conduct that caused a loss to the Plaintiffs. Second, the Plaintiffs have not made any showing that they are entitled to restitution from Mark Travel. The consumer cause of action created by the UTPA is limited to "restitution and ... such other equitable relief

11

... as the court may deem to be necessary and proper." 5 M.R.S.A. § 213(1). "The consumer has no private action under the UTPA, even if unfair trade practices have in fact been committed, unless those practices have not only harmed the consumer but also benefited the dealer." *Drinkwater v. Patten Realty Corp.* (1989) Me., 563 A.2d 772, 777 (Me. 1989), *citing Bartner v. Carter*, 405 A.2d 194, 203-04 (Me.1979). Plaintiffs, who have the burden on this claim, have not made a *prima facie* showing that Mark Travel received any benefit from them for which it should be required to make restitution.

### *Punitive Damages*

The court agrees with Mark Travel that punitive damages are unavailable because there is no sufficient predicate, either in terms of compensatory damages or in terms of an intentional tort, for such an award in this case. *See Zemero Corp. v. Hall*, 2003 ME 111, ¶ 11, 831 A.2d 413.

### Conclusion

For the reasons stated above, Defendant Mark Travel is entitled to summary judgment on all three counts of each of the complaints in these consolidated cases.

In *Remmes v. The Mark Travel Corporation et als.*, Me. Bus. & Cons. Dkt. BCD-CV-13-29, it is ORDERED AND ADJUDGED AS FOLLOWS:

1. Defendant The Mark Travel Corporation's Cross-Motion for Summary Judgment is granted. Plaintiffs Paul and Holly Remmes's Motion for Summary Judgment is denied.

2. Defendant The Mark Travel Corporation is hereby granted judgment against Paul and Holly Remmes on all counts of the complaint, and is awarded its costs as the prevailing party.

In *Begin v. The Mark Travel Corporation et als.*, Me. Bus. & Cons. Dkt. BCD-CV-13-34. it is ORDERED AND ADJUDGED AS FOLLOWS:

12

1. Defendant The Mark Travel Corporation's Cross-Motion for Summary Judgment is granted. Plaintiffs Robert and Lucy Begins' Motion for Summary Judgment is denied.

2. Defendant The Mark Travel Corporation is hereby granted judgment against Robert and Lucy Begin on all counts of the complaint, and is awarded its costs as the prevailing party.

Because the Plaintiffs' claims against TravelWise and Beth Rogers remain pending in each case, this Order does not constitute a final judgment. The Clerk will schedule a conference of counsel for discussion of the remaining aspects of these cases.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated March 13, 2014

A. M. Horton
Justice, Business & Consumer Court

13

**Paul Remmes, et al., v. Mark Travel Corp, and Beth Rogers a/k/a Beth McInnis d/b/a Travelwise**
**BCD-CV-13-29 consolidated with BCD-CV-34**


**Paul Remmes, et al.**
    **Petitioners / Plaintiffs**

       Counsel:                  James Audiffred, Esq.
                                      374 Main Street
                                      P.O. Box 1005
                                      Saco, ME 04072

**Mark Travel Corp, and Beth Rogers a/k/a Beth McInnis d/b/a Travelwise**
    **Respondents / Defendants**

       Counsel:                  Christine Kennedy - Jensen, Esq.
                                        103 Exchange St
                                      P.O. Box 7108
                                      Portland, ME 04112