ENTERED SEP 0 8 2014

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION 12-103
DOCKET NO. CV-~~11-492~~

JAW-CUM-09-03-14

TROUBH HEISLER, PA,

Plaintiff

v.

DECISION AND ORDER

DANIEL G. LILLEY, P.A.,
and JOHN FLYNN, III,

Defendants

STATE OF MAINE
Cumberland, ss, Clerk's Office

AUG 26 2014

RECEIVED

## INTRODUCTION

Pending is Troubh Heisler's (TH) motion for summary judgment in this action regarding the division of attorneys' fees received pursuant to a contingent fee in a medical malpractice lawsuit ("*Paige* action or lawsuit"). According to TH, the parties entered into a written contract in February 2009 ("2009 Agreement or MOA") that is unambiguous and obligates the defendants to pay TH 33% of any fee received by them on account of the *Paige* lawsuit. TH asserts that Lilley received $172,906.86 in attorney's fees, paid John Flynn $50,000 in legal fees for the *Paige* action but that neither Lilley nor Flynn has paid the 33% of those fees owed to TH pursuant to the 2009 Agreement. TH relies, in part, on the court's decision in *Troubh Heisler, PA v. Daniel Lilley, P.A., et al.*, Docket No. CUM-CV-2012-103, in which the court found that the defendants Lilley and Flynn breached the 2009 MOA with TH involving another lawsuit.

Flynn filed an opposition and continues to contend that the Separation Agreement between him and Troubh Heisler[1] goes part-and-parcel with the Memorandum of Agreement executed by him, Troubh Heisler and Daniel Lilley ("Lilley"). Flynn contends the two documents form an integrated agreement: the return of Flynn's capital account and the fee sharing in cases leaving Troubh Heisler were part of the same negotiations and integral parts of the same agreement, even though Lilley was not a party to the Separation Agreement. Flynn argues there are material facts at issue concerning his capital account that prevent summary judgment with respect to the MOA.

Lilley filed an opposition on the basis that James Howaneic's separate motion for summary judgment is pending and argues that Lilley can not be responsible to pay a referral fee to both TH and Howaniec. Lilley cannot owe 30% to Howaniec and 33% to TH. According to Lilley, the Howaniec claim must be resolved before TH's claim can be resolved. Howaniec has a separate action pending before this court and his claims against Flynn and Lilley are resolved today.

## STATEMENT OF UNDISPUTED FACTS

The parties' statements of material facts and applicable summary judgment law permit the court to find the following undisputed facts, unless stated otherwise.

From November 12, 1996 through January 31, 2009, Flynn conducted his practice at TH. (THSMF ¶ 3.) On or about January 2002, TH undertook the representation of a medical malpractice plaintiff, Pam Paige. William McKinley was the first attorney to represent Paige at TH. Shortly thereafter, Flynn took on the representation of Paige while he was at TH.

---

[1] Flynn seeks in his counterclaim funds that he believes he is entitled to under the separation agreement between him and Troubh Heisler. The issue is the repayment of his capital share investment into Troubh Heisler.

2

On or about January 31, 2009, Flynn resigned from TH and entered into an employment arrangement with Lilley. (THSMF ¶ 4.) Prior to Flynn's resignation from TH, Flynn became the primary attorney working on the *Paige* case for TH. When Flynn left TH to practice with Lilley, the client Paige and her case went with Flynn. (THSMF ¶ 7.)

On February 5, 2009, TH, Flynn and Lilley executed the MOA[2] related to several cases that went with Flynn at the time of his transition to Lilley, including the *Paige* action. (SMF ¶ 8.) The MOA states that for those clients who decided to have their cases transferred to Lilley with Flynn,

> it is the parties' intention that Flynn and Lilley will pay a referral fee to TH if and when any legal fees are paid to Flynn and/or Lilley.
>
> For each case, the referral fee paid to TH will be equal to a percentage of the total fees received by Flynn and/or Lilley on that case. The percentage referral fee for each case is listed in the right-hand column of the attached page.

(SMF ¶ 11.) For the *Paige* action, the amount shown on the attached page to the MOA for the referral fee to be paid to TH is 33% of the total fees received by Flynn and/or Lilley on that case. (THSMF ¶11.)

Flynn successfully tried the *Paige* case while at Lilley's office and, after verdict and with court approval, Lilley and Flynn received a total fee in the amount of $172,906.86. (THSMF ¶ 10.) Defendants have reimbursed TH for costs but have not paid TH the referral fee of 33% of $172,906.86, that remains due and owing. (THSMF ¶ 13.) The fees were collected through Lilley's office. Flynn, who has since departed from Lilley's office, was paid by Lilley $50,000 for his share of the attorney's fees in the

---

[2] The MOA is the same MOA that was the subject of the court's summary judgment ruling in *Troubh Heisler, PA v. Daniel Lilley, P.A., et al.*, Docket No. CV-2012-0103.

*Paige* lawsuit. Flynn demanded that Lilley pay TH but neither Lilley nor Flynn has paid

TH its referral fee. That referral fee due to TH under the MOA is $57,059.26.

## ISSUES

1.  Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P.

56(c). An issue of "fact exists when there is sufficient evidence to require a fact-finder to

choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME

42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d

1178).

In considering a motion for summary judgment, the court should consider the

facts in the light most favorable to the non-moving party, and the court is required to

consider only the portions of the record referred to and the material facts set forth in the

parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702,

704. Rule 56(h) requires a party that is opposing a motion for summary judgment to

support any qualifications or denials of the moving party's statement of material facts

with record citations.[3] *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6 n.5, 770 A.2d 653.

---

[3] Rule 56(h)(2) provides,
> The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by paragraph (4) of this rule.

In this case, the parties attempted, on occasion, to rebut opposing parties' statement of material facts with conclusory allegations and arguments and without support in the record. This failure simplified the court's finding of uncontroverted facts.

"All facts not properly controverted in accordance with this rule are deemed admitted."

*Rogers v. Jackson*, 2002 ME 140 ¶ 7, 840 A.2d 379 (*citing* M.R. Civ. P. 56(h)(4)).[4]

2.    Parties' Dispute

In summary, Flynn, while at TH, began representation of Ms. Paige in 2002 and worked on the case until Flynn left TH and took Ms. Paige's case with him to Lilley's office. When Flynn left TH to go to Lilley, TH, Flynn and Lilley negotiated and signed the MOA, an agreement that addressed how the fees would be handled in the *Paige* case. TH has not been paid its share of those fees, even though Lilley received $172,906.86 in attorney's fees for the *Paige* case and paid $50,000 to Flynn. Flynn also argues that factual issues in dispute on his counterclaim prevent summary judgment pursuant to the MOA.

(a) Memorandum of Agreement

Troubh Heisler contends that the MOA is a valid, enforceable and unambiguous contract, and that Troubh Heisler is entitled to judgment as a matter of law. The court agrees with TH on this point. The *Paige* case was listed on the page attached to the MOA, and stated a thirty-three percent (33%) share of total attorneys' fees "received by Flynn and/or Lilley" on that case were to be paid to TH as a referral fee. Lilley received $172,906.86 in fees as a result of the *Paige* case. Therefore, Lilley and Flynn owe TH $50,059.26.

---

[4] The court rejects Lilley's argument that Rule 56 requires more than reliance on the pleadings, particularly where TH tries to bind Lilley on the basis of an answer of Flynn's. Rule 56(e) provides,

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of that party's pleading, but must respond by affidavits or as otherwise provided in this rule, setting forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Flynn and Lilley argue that TH's calculation of entitlement to fees of $57,059.26 neglects the fact that Howaniec claims a referral of 30% of the total attorneys' fee generated in the *Paige* matter. As a result, they argue that Howaniec's fees will be deducted and paid to Howaniec and this would reduce the calculation of TH's fees. The court rejects this argument because the MOA expressly states "that the referral paid to TH will be equal to a percentage [33%] of the *total* fees received by Flynn or Lilley on that case." The MOA acknowledges that if any legal fees are paid to Lilley and/or Flynn, as their interests may appear between themselves, they are then jointly and severally obligated to pay to TH the percentage referral fee of 33% "of the total fees received by Flynn and/or Lilley". The MOA does not address Howaniec's referral fees or authorize the subtraction of Howaniec's referral fee from TH's referral fee. The rights, if any, of TH and Howaniec to a share of attorneys' fees related to the *Paige* action are separate and distinct and covered by different agreements.

(b.) Flynn's Counterclaim

The disputed facts relative to Flynn's counterclaim are not material to TH's claim of breach of the MOA. The material facts with respect to the contract claim are not in dispute. All of the material facts cited in Flynn's additional statement of material facts relate to his counterclaim and whether he is entitled to additional funds for his capital share. Even if Flynn wins some additional funds on his counterclaim this would have no effect on TH's claim for 33% of the *Paige* attorney's fees pursuant to the MOA. The only condition precedent to payment under the MOA is receipt by Flynn/Lilley of a fee. Accordingly, the counterclaim will be tried separately and does not prevent summary judgment on TH's claim for payment of a referral fee pursuant to the MOA.

6

The entry is:

1. Summary judgment GRANTED to Troubh Heisler in the amount of $57,059.26 on the Complaint against Lilley and Flynn, jointly and severally, together with interests and costs.

2. Clerk shall schedule Flynn's counterclaim on next available trial list.

Date:  August 26, 2014

Joyce A. Wheeler, Justice

ENTERED
09/03/14
MC

Troubh Heisler PA-Gerald Petruccelli Esq
James Howaniec-Scott Lynch Esq
Daniel G Lilley-Walter McKee Esq
John Flynn-Mark Franco Esq

STATE OF MAINE                                   SUPERIOR COURT
CUMBERLAND, ss                                   CIVIL ACTION
                                                 DOCKET NO. CV-12-103
                                                 √AW - CUM- 12/17/2013

TROUBH HEISLER, P.A.,
        Plaintiff

                                                 ORDER ON MOTION FOR
   v.                                            ENTRY OF FINAL
                                                 JUDGMENT

DANIEL G. LILLEY, P.A. and           **STATE OF MAINE**
JOHN FLYNN, III                      **Cumberland, ss, Clerk's Office**
        Defendants
                                          DEC 17 2013

                                     **RECEIVED**

        Plaintiff Troubh Heisler, P.A. moves the Court for the entry of final judgment on

fewer than all claims pursuant to Rule 54(b) of the Maine Rules of Civil Procedure.

                        Factual and Procedural Background

        This case arises out of a dispute over the division of attorney's fees from a civil

case according to a memorandum of agreement between plaintiff and the defendants.[1] On

July 30, 2013, the Court granted plaintiff Troubh Heisler's motion for summary judgment

on its claim for fees in the amount of $248,000 plus interest and costs. The remaining

claims are defendant John Flynn, III ("Flynn")'s counterclaim against plaintiff, which the

Court severed from the rest of the case, and defendant Daniel G. Lilley P.A. ("Lilley")'s

cross-claim against Flynn, in which he asserts that Flynn alone is responsible for the fees

awarded to Troubh Heisler.

---

[1] The full factual background on this case is set forth in the Court's decision and order on plaintiff's motion
for summary judgment. *See* CUMSC-CV-2012-103 (Me. Super. Ct., Cum. Cty., July 30, 2013).

## Discussion

Rule 54 allows the Court to enter final judgment on fewer than all claims "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." M.R. Civ. P. 54(b)(1). The Law Court has set forth the relevant factors to consider on a Rule 54 motion as follows:

> Among the many factors to be considered are the relationship of the adjudicated and unadjudicated claims, the possibility that the need for review may be mooted by future developments in the trial court, the chance that the same issues will be presented more than once to an appellate court, the possibility that an immediate appeal might expedite the trial court's work, and miscellaneous factors such as likely delay, economic and solvency considerations, the res judicata effect of a final judgment, and the like.

*Durgin v. Robertson*, 428 A.2d 65, 68 (Me. 1981). The Court has previously found that defendant Flynn's counterclaim will not affect plaintiff's judgment. *See* CUMSC-CV-2012-103, at 16 (Me. Super. Ct., Cum. Cty., July 30, 2013). Thus, there is no reason to delay the entry of final judgment for the counterclaim.

Lilley argues that the Court should not enter final judgment because of the outstanding cross-claim against defendant Flynn. In that cross-claim, Lilley alleges that Flynn is contractually obligated to pay any money due Troubh Heisler under the fee splitting agreement. The Law Court has stated that "the existence of a related claim that does not affect the rights of the plaintiff should not generally prevent entry of a judgment on the plaintiff's claim." *Fleet Nat'l Bank v. Gardiner Hillside Estates, Inc.*, 2002 ME 120, ¶ 12, 802 A.2d 408; *see also Fleet Bank of Me. v. Hoff*, 580 A.2d 690, 691 (Me. 1990) (upholding the trial court's entry of final judgment where other claims arose out of the same transaction but concerned only indemnification and personal guarantees). Regardless of how the Court resolves the issue of whether defendant Flynn is solely

responsible to plaintiff, that issue will not affect plaintiff's recovery. Because the entire amount of the fees is being held in escrow, plaintiff's recovery in no way depends on the amount that Flynn and Lilley recover.

Accordingly, the Court finds there is no just reason for delay and directs the entry of final judgment on its July 30, 2013 order.

Dated: 12/17/13

Joyce A. Wheeler
Justice, Superior Court

Troubh Heisler PA-Gerald Petruccelli Esq
Daniel G Lilley PA-Walter McKee Esq
John Flynn III-Mark Franco Esq

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-12-103
JANV -CUM - 7/30/2013

TROUBH HEISLER, PA,

Plaintiff

v.

DANIEL G. LILLEY, P.A.,
and JOHN FLYNN, III,

Defendants

DECISION AND ORDER
(*Braley* case # 2[1])

STATE OF MAINE
Cumberland. ss. Clerk's Office

JUL 30 2013

RECEIVED

## INTRODUCTION

Pending is Troubh Heisler's ("Troubh Heisler or TH") motion for summary

judgment in this action regarding the division of $1,240,000 in attorneys' fees received

pursuant to a contingent fee in the matter of *Estate of Thomas E. Braley, Sr. v. Eastern

Maine Medical Center and Lawrence Nelson, D.O.* ("*Braley* action or lawsuit").

According to TH, the parties entered into a written contract ("Memorandum of

Agreement or MOA") in February 2009 that is unambiguous and obligates the defendants

to pay TH 20% of any fee received by them on account of the *Braley* lawsuit. Troubh

Heisler also seeks to sever John Flynn's ("Flynn") Counterclaim concerning the

---

[1] This is the second decision and order in a pair of decisions relating to the award of attorneys' fees contested following the award of attorneys' fees in the *Braley* lawsuit. The first decision is *Richard D. Tucker, Esq. and Tucker Law Group v. Daniel G. Lilley, Esq. and Daniel G. Lilley Law Offices, P.A.. and John Flynn, III*, CUMSC-CV-2012-0075 (Me. Super. Ct., Cumb. Cty., July 30, 2013)(Wheeler, J.). There is a third case between Lilly and Flynn, also concerning attorneys' fees related to the *Braley* lawsuit.

treatment by TH of his separate capital account upon his departure from TH and moving to Lilley's office.

Flynn counters that his counterclaim[2] is a compulsory counterclaim and the parties' claims arise from the same operative facts. Flynn argues that there was no consideration for the Memorandum of Agreement and thus it fails. Flynn contends that the Separation Agreement between him and Troubh Heisler[3] goes part-and-parcel with the Memorandum of Agreement executed by him, Troubh Heisler and Daniel Lilley("Lilley"). Flynn contends the two documents form an integrated agreement: the return of Flynn's capital account and the fee sharing in cases leaving Troubh Heisler were part of the same negotiations and integral parts of the same agreement, even though Lilley was not a party to the Separation Agreement. Flynn argues there are material facts at issue concerning his capital account that prevent summary judgment.

Lilley filed a cross-motion for summary judgment alleging that disputed material facts exist because of TH's failure to produce (1) billing records showing the amount of legal fees incurred on the *Braley* action while it was at TH,[4] (2) an executed fee agreement between TH and Paula Braley ("Ms. Braley"),[5] or (3) any other fee agreement between Ms. Braley and any other attorney.[6] Ms. Braley is the executor of the Estate of Thomas E. Braley, Sr. Because of these omissions on the part of TH, Lilley contends that

---

[2] Flynn's counterclaim denies many of the allegations of the complaint and seeks to have it dismissed.

[3] Flynn seeks in his counterclaim funds that he believes he is entitled to under the separation agreement between him and Troubh Heisler. The issue is the repayment of his capital share investment into Troubh Heisler.

[4] Billing records are only relevant if this were a claim based on quantum meruit but that is not the issue in the pending matter.

[5] In CUMSC-CV-12-0075, the court found, as it does here, that there are no material issues of fact related to the claim of a contingent fee agreement between Troubh Heisler (Flynn) and Braley and that agreement is fully enforceable.

[6] Presumably Lilley is referring to Tucker's claim for fees in CUMSC-CV-12-0075.

2

there are material issues of fact concerning whether the agreement fails for lack of consideration and is unenforceable as against public policy. Lilley argues that a departing attorney and his former firm, without client consent, cannot control who receives the client files and associated fees. Under this theory, Lilley argues in his motion that TH is only entitled to be paid under a theory of quantum meruit for actual time spent, "unless the client expressly agrees to a shared contingent fee in writing." Lilley's Opposition to Plaintiff's Motion for Summary Judgment at 5. Lilley also contends that the February 2009 agreement fails for lack of consideration because TH gave nothing of value.

STATEMENT OF UNDISPUTED FACTS

The parties' statements of material facts and applicable summary judgment law permit the court to find the following undisputed facts.

On June 13, 2011, a jury in Penobscot County Superior Court returned a verdict for Paula Braley, as personal representative of the Estate of Thomas Braley, in the amount of $6,711,000.00.[7] There were post-trial motions that delayed the finality of the matter. The *Braley* action did not resolve until a settlement was reached by the parties in April 2012 and in an amount substantially less than the jury verdict. The trial court approved total attorneys' fees in the amount of $1,240,000.00, which are now in an escrow account. Pursuant to a court order and stipulation entered into on or about April 13, 2012 by the Estate of Thomas Braley, Sr., Lilley, Flynn, TH, and Tucker Law Group ("Tucker'), the attorneys' fees payable from the settlement in the *Braley* action were

---

[7] The trial court reduced the damages to $2,611,000.00.

3

placed in a special escrow account until the division of fees has been ruled upon and all appeals therefrom exhausted.[8] (THSMF, ¶ 9.)

Following the death of her husband, Thomas Braley, Sr., in May 2005 at Eastern Maine Medical Center, Paula Braley[9] was appointed personal representative of her husband's estate. Ms. Braley first consulted in 2005 with Richard D. Tucker, Esquire, ("Tucker") of the Tucker Group in Bangor, Maine. Tucker eventually consulted with Flynn about referring the case to him for primary representation. At this time, Flynn was a director/shareholder in the firm of Troubh Heisler. (FASMF, ¶5.) Flynn agreed to take the matter and they agreed to divide the fees so that Tucker would receive 25% of the total fees recovered in the *Braley* lawsuit because, in part, Tucker would remain involved in the litigation. (FASMF, ¶ 3.) At the commencement of Flynn's representation of Ms. Braley, she executed a contingent fee agreement with Troubh Heisler. (THSMF, ¶ 5, FOSMF, ¶5.)

Although the original, signed TH contingent fee agreement was never produced, there is no material dispute that Flynn and Ms. Braley executed a TH Contingent Fee Agreement. At a meeting on September 27, 2006 at the Tucker law firm attended by Tucker, Flynn, Ms. Braley and her brother, Randy Dicker, Flynn reviewed with Ms. Braley the terms of the Attorney-Client Contingent Fee Agreement in detail, explained the fee-sharing arrangement with Tucker, and explained that she would not be charged separately for two attorneys' involvement. Ms. Braley agreed and consented to the fee

---

[8] The parties could, of course, agree to the distribution of the attorneys' fees.
[9] By May 2011, Paula Braley remarried and her new legal name is Paula DeKeyser. For the purposes of simplicity, the court refers to Mrs. DeKeyser as Ms. Braley.

4

agreement and fee division between the attorneys and signed the TH contingent fee agreement. (Braley Affidavit, ¶5.)[10]

Flynn resigned from TH and moved to Lilley's office on or about January 31, 2009. (THSMF, ¶ 4, FASMF, ¶4.) At the time of Flynn's relocation, Ms. Braley decided to move her case along with Flynn from Troubh Heisler to Lilley Law Offices and her case went with Flynn. (THSMF, ¶ 7, FOSMF, ¶7.) When a number of Flynn clients stated that they wished to leave TH and continue with Flynn, Flynn negotiated a fee-sharing arrangement with TH and Lilley for those case, which is set forth in the Memorandum of Agreement. (THSMF, ¶8 and Ex. A, FASMF, ¶8 and Tab 2.)

On February 5, 2009, TH, Flynn and Lilley executed a Memorandum of Agreement ("MOA") related to several cases that went with Flynn at the time of his transition to Lilley, including the *Braley* action. (THSMF, ¶ 8 and Ex. A.) The MOA provides that for those clients who decided to have their cases transferred to Lilley with Flynn,

> it is the parties' intention that Flynn and Lilley will pay a referral fee to TH if and when any legal fees are paid to Flynn and/or Lilley.
>
> For each case, the referral fee paid to TH will be equal to a percentage of the total fees received by Flynn and/or Lilley on that case. The percentage referral fee for each case is listed in the right-hand column of the attached page.

For the *Braley* action, the amount shown on the attached page is 20% of the total fees received by Flynn and/or Lilley on that case. (THSMF, ¶10 and Ex.A.)

---

[10] A copy of the Unopposed Petition for Payment of Attorneys' Fees and Ms. Braley's supporting affidavit were filed in the underlying action, *Paula Braley, et al. v. Eastern Maine Medical Center and Lawrence Nelson, D.O.*, PENSC-CV-08-115. The court takes judicial notice of these documents to the extent necessary. TH filed the documents as attachments to its Reply to Defendant Lilley's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, but it did not include them as attachments to a Statement of Material Facts. TH contends that this issue is immaterial to the summary judgment motion. This is not entirely accurate given Lilley's arguments.

Flynn successfully tried the *Braley* action by himself and after verdict and with Court approval, the attorneys received and placed in escrow the sum of $1,240,000 representing the fee paid by the Plaintiff in the Braley action. (THSMF, ¶ 9.) Flynn, the Tucker Law Group, Troubh Heisler and Lilley claim entitlement to all or a portion of the 40% contingent fee.

## ISSUES

1.    Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178).

In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. Rule 56(h) requires a party that is opposing a motion for summary judgment to support any qualifications or denials of the moving party's statement of material facts with record citations.[11] *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6 n.5, 770 A.2d 653.

---

[11] Rule 56(h)(2) provides,

> The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this

"All facts not properly controverted in accordance with this rule are deemed admitted." *Rogers v. Jackson*, 2002 ME 140 ¶ 7, 840 A.2d 379 (*citing* M.R. Civ. P. 56(h)(4)).[12]

2.      Parties' Arguments

In summary, TH, through Flynn, began representation of Ms. Braley and worked on the case until Flynn left TH and took Ms. Braley's case with him to Lilley's office. At the time TH began representation of Ms. Braley, Flynn was associated with TH. When Flynn left TH to go to Lilley, TH, Flynn and Lilley negotiated and signed the MOA. At the core of this dispute for Lilley is the fact that the original, signed Contingent Fee Agreement between Ms. Braley and TH is missing. Neither TH nor Flynn has produced a signed fee agreement with Ms. Braley. (LASMF, ¶ 5.) However, there is no material issue of fact concerning the existence of a fully enforceable written contingency fee agreement between Flynn and Ms. Braley executed on September 27, 2006 and a separate fee division agreement between Flynn, Tucker and Ms. Braley. (Unopposed Petition for Payment of Attorneys' Fees and Braley Affidavit, ¶5.) *See Richard D. Tucker, Esq., and Tucker Law Group v. Daniel G. Lilley, Esq., and Daniel G. Lilley Law Offices, P.A. and John Flynn, III, Esq.*, CUMSC-CV-2012-0075 (Me. Super. Ct., Cumb. Cty., July 30, 2013 (Wheeler, J.). In that decision, the court found that these agreements fully complied

---

rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by paragraph (4) of this rule.

In this case, the parties attempted, on occasion, to rebut opposing parties' statement of material facts with conclusory allegations and arguments and without support in the record. This failure simplified the court's finding of uncontroverted facts.

[12] The court rejects Lilley's argument that Rule 56 requires more than reliance on the pleadings, particularly where TH tries to bind Lilley on the basis of an answer of Flynn's. Rule 56(e) provides,

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of that party's pleading, but must respond by affidavits or as otherwise provided in this rule, setting forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

7

with Maine Bar Rule 3.3(d) and 8(d) and (e) and were enforceable. Thus, Lilley's argument against summary judgment based on the lack of an enforceable, signed fee agreement fails.

At the core of this dispute for Flynn is that he was not paid the full value of his capital share within 90 days, vitiating any consideration for the MOA and raising factual issues concerning the validity and enforceability of the contract with TH.

(a) Memorandum of Agreement

Troubh Heisler contends that the MOA is a valid, enforceable and unambiguous contract, and that Troubh Heisler is entitled to judgment as a matter of law. The Memorandum of Agreement states,

> For each such case, the referral paid to TH will be equal to a percentage of the total fees received by Flynn and/or Lilley on that case. The percentage referral fee for each case is listed in the right-hand column of the attached page.

(THSMF, ¶8 and Ex. A, FOSMF, ¶8 and Tab 2.) The *Braley* case was listed on the page attached to the Memorandum of Agreement, and stated a twenty percent (20%) share of attorneys' fees "received by Flynn and/or Lilley" on that case.

Flynn argues first that neither Flynn nor Lilley have any control over the attorney's fees so that there is no way to know what fees either Flynn or Lilley will receive. However, that is not entirely true, nor is it responsive to the question what fees TH may be entitled to. There are fees in the amount of $1,240,000 in an escrow account awaiting for the parties' agreement or a court order for the distribution of those fees.

Flynn next argues that Troubh Heisler's calculation of entitlement to fees of $248,000.00 neglects the fact that Tucker claims a referral of 25% of the total attorneys' fee generated in the *Braley* matter. As a result, Flynn argues that 25 % of $310,000 will

8

be deducted and paid to Tucker before either Flynn or Lilley receive any fees. If correct, this would alter the calculation of Troubh Heisler's fees down to $186,000. However, the MOA expressly states that "that the referral paid to TH will be equal to a percentage [20%] of the *total* fees received by Flynn or Lilley on that case." Tucker's share is also equal to twenty-five percent of the *total* legal fees generated in the *Braley* action. (FASMF, ¶36.) Thus, the calculation of attorneys' fees owed to referring or prior counsel is based on a percentage of total fees paid, for TH 20% and for Tucker 25%.

Flynn also argues the parties disagree about what the contract is that controls the fees. Troubh Heisler says the contract is the Memorandum of Agreement but Flynn counters the contract is the Memorandum of Agreement *and* the Separation Agreement. Flynn further argues the Memorandum of Agreement lacks any consideration because Troubh Heisler did not pay Flynn the capital share[13] he believes he is entitled to. Flynn asserts that in exchange for TH's promise to pay Flynn his capital share within 90 days of his departure in an amount of $30,000 - $32,000, Flynn agreed to share a portion of the attorneys' fees generated from the cases which left TH with Flynn upon collection of the fees. (FASMF, ¶15.)

The terms of the Separation Agreement provide in pertinent part,

2. In exchange for JPF endorsing his stock certificates to TH, TH will deliver to JPF his share of the firm's capital as of January 1, 2009 when the amount of the firm's capital as of that date is determined.

9. JPF, TH and Daniel G. Lilley Law Offices have entered into a Memorandum of Agreement concerning the sharing of legal fees, effective February 1, 2009, the terms of which are specifically incorporated herein.

10. This Agreement, including the Memorandum of Agreement identified in paragraph 9 above, contains the entire agreement between JH an JPF in connection with the topics set forth herein, and supersedes all prior agreement and negotiations between the parties.

---

[13] Flynn contends that the capital share he is owed is $30,838.16.

(FASMF, ¶ 20.) On or about June 23, 2009, Flynn received a check from TH for $21,655.00 purporting to be his share of the capital account. (FASMF, ¶23.) Flynn did not believe he received his share in accordance with the firm's by-laws and the payment was not issued within 90 days of his departure from TH. TH explained to Flynn that the calculation of his capital share value was based upon unreimbursed client expenses owed by clients to TH. (FASMF, ¶29.) Flynn states that he would never have agreed to the fee sharing agreement if TH had disclosed its intent to calculate his capital share in this manner, and as a result he has suffered significant financial consequences and tax penalties as a result of TH's failure to repay his capital share as promised. (FASMF, ¶32.)

Flynn also claims that there was no consideration for the MOA. The MOA itself states: "[i]n consideration of the premises and the mutual benefits to be derived therefrom, the parties hereby sign this agreement . . . ." This clause in the MOA establishes that there was consideration for the MOA. *Whitney v. Stearns*, 16 Me. 394, 1839 Me. LEXIS 180 (Me. 1839)(admission in a contract in writing that it was made for a valuable consideration is prima facie evidence of a sufficient consideration for such contract). All of Flynn's assertions about what did or did not induce him to agree to the MOA are disputed, but are not material to the issue before the court. For Flynn to contend that he was induced to sign the MOA is for Flynn to acknowledge that he entered into a negotiated bargain, which is what consideration is about. *See Panasonic Communs. & Sys. Co. v. Dept. of Admin, Bureau of Purchases*, 1997 ME 43, ¶12, 691 A. 2d 190 ("Before a party's performance may constitute consideration, there must be a bargained-for promise in exchange for which consideration is given.") *citing Whitten v.*

10

*Greely-Shaw*, 520 A. 2d 1307, 1310 (Me. 1987). See also RESTATEMENT (SECOND) CONTRACTS §71(1)(1981) ("To constitute consideration, a performance or return promise must be bargained for.") Subsequent dissatisfaction about performance of a contract does not retroactively destroy its consideration.

The MOA states that the consideration is the mutual undertakings of the parties, which include TH's undertaking to look only to fees received by Flynn and Lilley for its earned fees from departing clients and TH's undertaking to continue to underwrite the costs of Flynn's contingent fee practice. The MOA specifically recites,

> The referral fees paid under this agreement are in addition to the client's obligations to reimburse TH for disbursements and costs advanced. Flynn and/or Lilley will treat those costs as liens on any recoveries made on those cases, and will reimburse them to TH on behalf of the clients to the extent proceeds are available from those recoveries.

If, as Flynn argues, that the Separation Agreement is linked to the MOA, that furnishes additional consideration for the MOA. Yet, while the MOA may be incorporated into Flynn's Separation Agreement, the MOA does not incorporate the Separation Agreement. The court rejects Flynn's argument about one contract being contingent on the other and about no consideration.

There is also no ambiguity within the four corners of the MOA to allow the court to consider extrinsic evidence. Flynn's motivations, intentions or understandings are irrelevant to this court's interpretation of the MOA. And, the incorporation of the MOA into the Separation Agreement does not make the MOA ambiguous. The MOA is clear on its face that it is an agreement among TH, Flynn and Lilley concerning the sharing of legal fees received on various personal injury, medical malpractice and employee's workers' compensation matters in contemplation of Flynn's departure from TH to work

11

at Lilley. The MOA further clarifies in the second paragraph of the MOA that it is the intent of the parties that Flynn and Lilley will pay a referral fee to TH if and when any legal fees are paid to Flynn and/or Lilley. Paragraph 3 describes there will be a percentage fee for each case and expressly states "the referral paid to TH will be equal to a percentage of total fees received by Flynn and/or Lilley on that case." The MOA attachment identifies the percentage referral fee for the *Braley* action as 20%. The fourth paragraph clarifies that referral fees paid under the MOA are in addition to any of the client's obligations to reimburse TH for disbursements and costs advances. And the last paragraph recites the consideration for the promises and mutual benefits to be derived from the MOA and the effective date of February 1, 2009 for the MOA. There is simply nothing stated in the MOA regarding the separation agreement. Any problems with the Separation Agreement do not nullify or discharge Flynn's obligations under the MOA.

TH seeks a sum certain on a written contract. Flynn has asserted a claim for breach of a different contract, as to which he may or may not be entitled to a setoff. Flynn's right to payment of additional capital is independent from, and not a condition precedent to his duty to pay under the MOA. Flynn has not offered any evidence to support his claim that his dispute under the Separation Agreement voids his obligations under the MOA. *Irving v. Town of Clinton*, 1998 ME 112, ¶4, 711 A. 2d 141. *See also* RESTATEMENT (SECOND) CONTRACTS §240 cmt. b (1981)("If there are two separate contracts, one party's performance under the first and the other party's performance under the second are not to be exchanged under a single exchange of promises, and even a total failure of performance by one party as to the first has no necessary effect on the other party's duty to perform the second.") Even if Flynn is owed

12

additional payment of his capital, that fact would not constitute a failure of condition that could discharge his duty under the MOA. At best, it may entitle him to a setoff.

As to this court's construction of the Separation Agreement, that agreement incudes a merger clause, precluding extrinsic evidence under the Parol Evidence Rule concerning Flynn's motivation. Whatever the court decides about the Separation Agreement is not a basis for the court to allow extrinsic evidence about Flynn's state of mind to evade his clear and unambiguous obligations under the MOA. *Neal v. Flint*, 88 Me. 72, 83, 33 A. 669, 673 (1895)("The parties have reduced their contract to writing, their rights must be governed by and depend upon its terms as therein expressed, irrespective of the parol evidence of what was intended, or what took place previous to or at the time of making the contract.")

The court also rejects Flynn's argument that there is some connection between rights Tucker may have and the rights of TH. The MOA acknowledges that if any legal fees are paid to Lilley and/or Flynn, as their interests may appear between themselves, they are then jointly and severally obligated to pay to TH the percentage referral fee of 20% "of the total fees received by Flynn and/or Lilley". Flynn is also obligated under the 2006 fee division agreement between Flynn and Tucker to pay to Tucker 25% of total fees received by Flynn in the *Braley* lawsuit. The MOA does not mention Tucker; it speaks only of TH's referral fee that is "equal to a percentage of the total fees received by Flynn and Lilley on that case." The rights of TH and Tucker to a share of attorneys' fees awarded pursuant to the contingent fee agreement in the *Braley* action are separate and distinct.

(b) Public Policy Argument of Lilley

13

Lilley makes the argument that the MOA is unenforceable as against public policy. The Rules of Professional Conduct 1.5 did not become effective until August 1, 2009. The MOA was signed in February 2009, which means the governing Rule was the Maine Bar Rule 3.3(d). Rule 3.3(d) allowed fee division and did not require that the fee division be confirmed in writing by the client as Rule 1.5(e) requires. Rule 3.3(d) required only that the client consents to the employment of the other attorney and to the terms of the fee division. Maine Bar Rule 8(d) only required contingent fee agreements to be in writing. The MOA was fully in compliance with Rule 3.3(d). Moreover, the defendants received and placed in escrow $1,240,000.00, representing the fee paid by the Plaintiff in the *Braley* action. (THSMF, ¶9.) Ms. Braley, as a signatory to the Escrow Deposit and Trust Agreement and the Stipulation and Agreement, was fully informed that any fees owed to any of the attorneys would be paid out of the 40% contingent fee agreement, resulting in total attorney's fees of one million, two hundred and forty thousand dollars. (THSMF, ¶9 and Exs. B and C.) Indeed, she is the Trustee responsible for the distribution of those fees in accordance with a court order. Throughout the *Braley* lawsuit, Mr. Flynn kept Ms. Braley informed and she fully consented to the employment of other attorneys and consented to their fee agreements and fee division.

Lilley as a signatory to the MOA can barely be heard to attack an agreement in which he participated. He argues that an agreement that he entered into is void or illegal as against public policy. As his memorandum discloses, he knows that Maine has chosen to abandon a policy that disfavors fee-splitting agreement between lawyers. Lilley relies on out of state case law to make his point because there is no Maine law to support his position. Maine's Rule, both the old Rule 3.3(d) and the new Rule 1.5(e), embraces the

14

idea that lawyers should share in contingent fees without regard to their participation in the matter. The Maine Rule, old or new, does not disfavor compensation of TH. *See* M.R. Prof. Conduct 1.5 cmt. (8)(noting that paragraph (e) governing the division of fees does not apply to "the division of fees to be received in the future for work done when lawyers were previously associated in a law firm" and "does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement.") The focus of the Maine Bar Rules and in the Maine Rules of Professional Conduct has always been upon the informed consent of the client. As Lilley readily acknowledges the purpose of these Rules is to protect the best interests of the client. The Rule has no application to additional agreements between lawyers that are consistent with the client's fee agreement. There is no material issue of fact that Ms. Braley assented to the fee division. Ms. Braley's affidavit details the history of her execution of multiple contingent fee agreements involving the sharing of the fees about which she was informed and of which she approved. Her affidavit further discloses that Flynn specifically told her that any fees owed to either TH or Lilley would be paid out of the contingency fee payable to him as it was with the Tucker Law Group. (See ¶10 of affidavit of Paula (Braley) DeKayser, dated March 13, 2012, filed in support of Plaintiff's Unopposed Petition for Payment of Attorneys' Fees in *Paula Braley et al. v. Eastern Maine Medical Center and Lawrence Nelson, D.O.*, PENSC-CV-08-115.)

3.    Severance of Flynn's Counterclaim

M.R.Civ.P. 42 permits the court to sever any claim, cross-claim, counterclaim or third-party claim or any separate issue in the interest of convenience and justice. The disputed facts relative to Flynn's counterclaim are not material to TH's claim of breach of

15

the MOA. The material facts with respect to the contract claim are not in dispute. All of the material facts cited in Flynn's additional statement of material facts relate to his counterclaim and whether he is entitled to additional funds for his capital share. Even if Flynn wins some additional funds on his counterclaim this would have no effect on TH's claim for $248,000 pursuant to the MOA. The only condition precedent to payment under the MOA is receipt by Flynn/Lilley of a fee. Under the escrow agreement, funds held pursuant to that agreement may be disbursed pursuant to a court order or agreement of the parties once appeal is final. Accordingly, the request for severance is granted and the counterclaim will be tried separately.

The entry is:

1. Summary judgment GRANTED in the amount of $248,000.00 on the Complaint against Lilley and Flynn, jointly and severally, together with interests and costs.

2. Lilley's Motion for Summary Judgment is DENIED.

3. Flynn's cross-claim against Lilley is DISMISSED.

4. Motion for severance of Flynn's counterclaim GRANTED.

5. Clerk shall schedule Flynn's counterclaim on next available trial list.

Date: July 30, 2013

Joyce A. Wheeler, Justice

Troubh Heisler PA—Gerald Petruccelli Esq
Daniel G Lilley PA—Walter McKee Esq/James Billings Esq
John Flynn III—Mark Franco Esq

16

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-12-103
✓AW – CUM– 12/17/2013

*Me.*/

TROUBH HEISLER, P.A.,
    Plaintiff

v.

DANIEL G. LILLEY, P.A. and
JOHN FLYNN, III
    Defendants

ORDER ON MOTION FOR
ENTRY OF FINAL
JUDGMENT

**STATE OF MAINE**
**Cumberland, ss, Clerk's Office**

**DEC 17 2013**

# RECEIVED

Plaintiff Troubh Heisler, P.A. moves the Court for the entry of final judgment on

fewer than all claims pursuant to Rule 54(b) of the Maine Rules of Civil Procedure.

## Factual and Procedural Background

This case arises out of a dispute over the division of attorney's fees from a civil

case according to a memorandum of agreement between plaintiff and the defendants.[1] On

July 30, 2013, the Court granted plaintiff Troubh Heisler's motion for summary judgment

on its claim for fees in the amount of $248,000 plus interest and costs. The remaining

claims are defendant John Flynn, III ("Flynn")'s counterclaim against plaintiff, which the

Court severed from the rest of the case, and defendant Daniel G. Lilley P.A. ("Lilley")'s

cross-claim against Flynn, in which he asserts that Flynn alone is responsible for the fees

awarded to Troubh Heisler.

---

[1] The full factual background on this case is set forth in the Court's decision and order on plaintiff's motion for summary judgment. *See* CUMSC-CV-2012-103 (Me. Super. Ct., Cum. Cty., July 30, 2013).

Rule 54 allows the Court to enter final judgment on fewer than all claims "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." M.R. Civ. P. 54(b)(1). The Law Court has set forth the relevant factors to consider on a Rule 54 motion as follows:

> Among the many factors to be considered are the relationship of the adjudicated and unadjudicated claims, the possibility that the need for review may be mooted by future developments in the trial court, the chance that the same issues will be presented more than once to an appellate court, the possibility that an immediate appeal might expedite the trial court's work, and miscellaneous factors such as likely delay, economic and solvency considerations, the res judicata effect of a final judgment, and the like.

*Durgin v. Robertson*, 428 A.2d 65, 68 (Me. 1981). The Court has previously found that defendant Flynn's counterclaim will not affect plaintiff's judgment. *See* CUMSC-CV-2012-103, at 16 (Me. Super. Ct., Cum. Cty., July 30, 2013). Thus, there is no reason to delay the entry of final judgment for the counterclaim.

Lilley argues that the Court should not enter final judgment because of the outstanding cross-claim against defendant Flynn. In that cross-claim, Lilley alleges that Flynn is contractually obligated to pay any money due Troubh Heisler under the fee splitting agreement. The Law Court has stated that "the existence of a related claim that does not affect the rights of the plaintiff should not generally prevent entry of a judgment on the plaintiff's claim." *Fleet Nat'l Bank v. Gardiner Hillside Estates, Inc.*, 2002 ME 120, ¶ 12, 802 A.2d 408; *see also Fleet Bank of Me. v. Hoff*, 580 A.2d 690, 691 (Me. 1990) (upholding the trial court's entry of final judgment where other claims arose out of the same transaction but concerned only indemnification and personal guarantees). Regardless of how the Court resolves the issue of whether defendant Flynn is solely

responsible to plaintiff, that issue will not affect plaintiff's recovery. Because the entire amount of the fees is being held in escrow, plaintiff's recovery in no way depends on the amount that Flynn and Lilley recover.

Accordingly, the Court finds there is no just reason for delay and directs the entry of final judgment on its July 30, 2013 order.

Dated: 12/17/13

Joyce A. Wheeler
Justice, Superior Court

Troubh Heisler PA-Gerald Petruccelli Esq
Daniel G Lilley PA-Walter McKee Esq
John Flynn III-Mark Franco Esq